62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SECURITIES SERVICE NETWORK, INC., Steven L. Coffey, and
Asset Planning Corporation, Plaintiffs-Appellees,
v.
Ronald E. CROMWELL and Victorine L. Cromwell, Defendants-Appellants.
 No. 94-5778.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1995.
 
 Before: MARTIN and SILER, Circuit Judges; and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Ronald E. Cromwell and Victorine L. Cromwell appeal the district court's grant of summary judgment in favor of Securities Service Network, Inc., and its president Steven L. Coffey. They claim that the district court erred in ruling that their demand for arbitration was time-barred and in denying their motion to dismiss for improper venue. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 The Cromwells first met Coffey in 1981. At the time, Coffey was a registered securities representative with Asset Planning Corporation, a NASD-registered corporation that operated as a broker/dealer. In 1983, Coffey left Asset Planning to form the NASD-registered Southern Financial Consultants, Inc., which changed its name to Security Service Network, Inc., in 1989.
 
 
 3
 Shortly after meeting Coffey, both Ronald and Victorine Cromwell obtained real estate licenses and became real estate brokers. They also became regular investors in various Coffey-related partnerships and limited partnerships: from September 1981 through 1987, the Cromwells made twenty-two investments at Coffey's behest. From late 1981 through February 1983, the Cromwells maintained a brokerage account with Asset Planning Corporation, and Coffey was their account representative. They made eight of their twenty-two investments during that period. In 1983, however, Victorine Cromwell became a licensed and registered securities representative with Southern Financial Consultants, Inc., and began selling investments. She served as the Cromwells' account representative for the remaining fourteen investments, presumably receiving a commission and conducting a suitability review with respect to each one.
 
 
 4
 Coffey served as the general partner in four ventures in which the Cromwells invested: the Hardin Mill Partnership, the Cusick Partnership, Kingston-Watt, Ltd., and Kingston-Watt, II, Ltd. They also invested in Bridgewater Associates, Ltd., a partnership of which Coffey served as president. All told, they invested roughly $264,000 in those ventures. In so investing, the Cromwells presumably relied upon Coffey's expertise, his seeming good faith, and his representations regarding the nature, quality, and risk of those investments.
 
 
 5
 Suspicious of Coffey's advice, the Cromwells began withholding their contributions from the Coffey-managed ventures in 1991. In his capacity as general partner, Coffey responded by threatening legal action in November 1992. In January 1993, the Cromwells relinquished their interests in the Hardin Mill Partnership, the Cusick Partnership, Kingston-Watt, Ltd., and Kingston-Watt, II, Ltd., to Coffey, in exchange for a release from future liability.
 
 II.
 
 6
 On June 12, 1993, the Cromwells filed a Statement of Claim and Demand for Arbitration with NASD, naming Coffey, Security Services Network, Inc., and Asset Planning Corporation as respondents. They sought damages for state and federal law violations arising from their purchase of twenty-two "unsuitable and speculative instruments." They claimed that they could not have detected Coffey's misrepresentations until 1991.
 
 
 7
 In response, Coffey, Security Services Network, Inc., and Asset Planning Corporation filed this suit, seeking a ruling that their claims were not eligible for arbitration pursuant to Section 15 of NASD's Code of Arbitration Procedure, as they were barred by the six-year statute of limitations. The Cromwells moved to dismiss for lack of subject matter jurisdiction and improper venue.
 
 
 8
 The district court denied their motion on November 15, ruling that it had subject matter jurisdiction and that venue in the Eastern District of Tennessee was proper. The Cromwells then filed an answer to the complaint as well as a counterclaim, seeking to compel arbitration under the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. On December 3, the district court granted Asset Planning Corporation's unopposed motion for summary judgment, later clarifying that its order did not pertain to Coffey or Security Services Network, Inc.
 
 
 9
 The remaining parties then filed cross motions for summary judgment. In a May 17, 1994, order, the district court partially granted the motion of Coffey and Security Services Network, Inc., enjoining the Cromwells' claims for arbitration regarding each investment, save claims concerning the Cusick Partnership. In so ruling, the court distinguished their Cusick Partnership investment from their other investments on the grounds that it was made within six years of their arbitration demand. This timely appeal followed. Although the Cromwells' notice of appeal only designates an appeal of the May 17, 1994, order granting summary judgment, they also address the November 15, 1993, order regarding venue in their brief without objection.
 
 III.
 
 10
 A. The Timeliness of the Cromwell's Demand for Arbitration
 
 
 11
 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This Court reviews a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991). Moreover, in reviewing a summary judgment motion, we view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992).
 
 
 12
 Section 15 of the NASD Code of Arbitration Procedure provides: "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy." After the parties filed their respective briefs in this case, First Options of Chicago, Inc., v. Kaplan, 115 S.Ct. 1920 (1995), was decided, instructing courts how to resolve a disagreement between parties to an arbitration agreement, concerning the arbitrability of an underlying dispute. Specifically, the Supreme Court outlined "how a court should decide whether the parties have agreed to submit the arbitrability issue to arbitration," Id. at 1924, advising courts to apply state law contract principles. Id. (citations omitted). Importantly, however, the Court also cautioned that "[c]ourts should not assume that the parties agreed to arbitrate the issue of arbitrability unless there is 'clear and unmistakable evidence' that they did so." Id. (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986).
 
 
 13
 On the record before us, the Cromwells cannot show that Coffey and Security Services Network, Inc., clearly and unmistakably agreed to submit the question of arbitrability to arbitration. As the Cromwells emphasized at oral argument, Section 35 of the NASD Code of Arbitration Procedure states that "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties." However, we do not believe that this provision alone constitutes the requisite "clear and unmistakable evidence" that the parties intended and agreed to arbitrate the issue of arbitrability. Edward D. Jones & Co. v. Sorrells, 957 F.2d 509, 514, n. 7 (7th Cir.1992) (citing AT & T Technologies, 475 U.S. at 649); contra FSC Securities Corp. v. Freel, 14 F.3d 1310, 1312 (8th Cir.1994). Because the parties did not clearly agree to submit the arbitrability question to arbitration, that issue was appropriately subject to independent judicial review. See Kaplan, 115 S.Ct. at 1925-26. Accordingly, the district was the proper forum to assess the timeliness of the Cromwells' arbitration demand under Section 15.
 
 
 14
 In essence, the Cromwells argue that a genuine issue of material fact exists as to their failure to timely file their Statement of Claims with the NASD. On appeal, they divide their claims into two groups: those regarding the five Coffey-managed limited partnerships in which they had a stake and those pertaining to the "unsuitability" of their investments. They argue that Coffey's status as the general partner in the limited partnerships renders their claims timely regarding those investments, because Coffey exercised continuing control over them. They assert that Coffey's actions as general partner are actions about which they are entitled to complain. While that may be true, the Cromwells have changed their argument on appeal. In their original arbitration demand, they focused upon Coffey's behavior in recommending the investments. Now, however, they seek to contest Coffey's behavior throughout his tenure as general partner. To properly assess the Cromwells' claims, this Court need only apply Section 15 to the unsuitability and concealment allegations stated in the Cromwell's original arbitration demand.
 
 
 15
 Accordingly, we must determine the meaning of "occurrence or event giving rise to the act or dispute, claim or controversy" in the context of the Cromwells' original claims. As part of their effort to recast those claims, the Cromwells now assert that the relevant "occurrence or event" was Coffey's repeated act of causing them to make additional note payments. However, the record reveals that the Cromwells actually challenged Coffey's investment recommendations only, their present claims notwithstanding. The district court was correct in observing:
 
 
 16
 The only event or occurrence which could give rise to arbitration and which also falls within the six-year eligibility requirement is the fact that on November 12, 1987, the Cromwells signed a note in favor of Cusick Partnership. All subsequent contacts between Coffey and the Cromwells related to payments on their previous investment decisions. During the applicable six-year period, the Cromwells made no new investment decisions, save one; their other expenditures were merely payments on previous investment decisions.
 
 
 17
 With regard to their unsuitability claims, the Cromwells argue that because the claims arising out of their last investment, the Cusick Partnership, were timely filed, all of their claims should be deemed timely filed. Nesbit v. McNeil, 896 F.2d 380, 384-85 (9th Cir.1990) (holding, in the context of a churning case, that the statute of limitations did not begin to run until the final account transaction occurred, given the "unified" nature of the churning offense). This is not a churning case, however. See Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 494 (6th Cir.1990) (recognizing that churning and unsuitability claims are distinct); see also Sorrells, 957 F.2d at 510 n. 2 (recognizing that the fact that a claimant has some timely filed claims does not render timely all of that claimant's potential claims). In the alternative, the Cromwell's urge us to adopt a "date of discovery" rule.
 
 
 18
 In their original Statement of Claim and Demand for Arbitration, the Cromwells also claimed that Coffey fraudulently concealed the unsuitability of the investments from them. As we determined in Dean Witter Reynolds, Inc. v. McCoy, 995 F.2d 649, 651 (6th Cir.1993), if there is adequate proof of fraudulent concealment, the defendants' claims more than six-years-old may still be pursued in arbitration. However, the district court observed that the Cromwells failed to present any evidence "of the kind of fraud or fraudulent concealment which would take this case outside the six-year bar." A review of the record indicates that this observation was correct.
 
 
 19
 B. Venue in the Eastern District of Tennessee
 
 
 20
 The Cromwells also claim that venue in the Eastern District of Tennessee was improper. The parties agree that venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. Secs. 1391(a)(2) and (b)(2). According to the Cromwells, however, the relevant event was the filing of the Cromwell's Statement of Claim and Demand for Arbitration, which was mailed from Arizona to New York. Coffey contends that the relevant events are the facts underlying the Cromwells' investment decisions. As Coffey points out, the parties were first introduced in Knoxville, where they both resided at the time. In addition, all of investments were effected through the services of Tennessee corporations, with principal places of business in Knoxville. Moreover, any fraudulent concealment would have occurred in Knoxville. Thus, the district court was correct in determining that venue was proper in the Eastern District of Tennessee.
 
 
 21
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation