**PAINEWEBBER, INC., Plaintiff,**

v.

**Charles M. LANDAY and Sheila D. Landay, Defendants.**

**Civ. A. No. 94–10957–DPW.**

United States District Court,
D. Massachusetts.

Sept. 21, 1995.

---

Steven L. Manchel, Boston, MA, for plaintiff.

Douglas K. Mansfield, Boston, MA, for defendants.

### MEMORANDUM AND ORDER

WOODLOCK, District Judge.

The plaintiff, PaineWebber, Inc., instituted this action for declaratory and injunctive relief to bar the defendants, Charles M. Landay and Sheila D. Landay ("the Landays"), from seeking arbitration of certain claims against PaineWebber. PaineWebber has moved for a preliminary injunction pursuant to Fed.R.Civ.P. 65 to enjoin the Landays from proceeding to arbitration. As grounds

for its motion, PaineWebber contends that 1) the Landays' claims are not eligible for arbitration, 2) the claims are deficient as a matter of law and so not arbitrable, and 3) PaineWebber will be irreparably harmed if compelled to arbitrate these claims. PaineWebber also asserts that the punitive damages the Landays seek are not available in arbitration.

In response, the Landays move pursuant to 9 U.S.C. § 4 for an order compelling PaineWebber to arbitrate the Landays' claims. Subject matter jurisdiction lies under 28 U.S.C. § 1332(a).[1] Finding the disputes within the scope of the parties' arbitration agreement, I will deny PaineWebber's motion for a preliminary injunction, and grant defendant's motion to compel arbitration.

## I

From 1983 to 1992, the Landays opened various accounts with PaineWebber, a company which provides brokerage services to individual investors. The Landays had been referred to PaineWebber by their accountant at Ernst & Young, who "believed [Charles Landay] needed financial advice, particularly to reduce the risk represented by [his] single large Stride Rite holding."[2] (Affidavit of Charles M. Landay ("Landay Aff." ¶ 3.) The PaineWebber broker assigned to handle the Landays' accounts was James A. Collins. All of the accounts were non-discretionary, i.e., they were formally controlled by the Landays who were thus free to reject Collins' advice.

Upon opening their accounts, the Landays executed a "Client Agreement" prepared by PaineWebber.[3] Clause 19 of this Agreement, entitled "ARBITRATION", provides (in bold and in capital letters) in pertinent part as follows:

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL.

. . . . .

* THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING ...

. . . . .

I AGREE, AND BY CARRYING AN ACCOUNT FOR ME PAINEWEBBER AGREES, THAT ANY AND ALL CONTROVERSIES WHICH MAY ARISE BETWEEN ME AND PAINEWEBBER CONCERNING ANY ACCOUNT, TRANSACTION, DISPUTE OR THE CONSTRUCTION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE HELD UNDER AND PURSUANT TO AND BE GOVERNED BY THE FEDERAL ARBITRATION ACT, AND SHALL BE CONDUCTED BEFORE AN ARBITRATION PANEL CONVENED BY THE NEW YORK STOCK EXCHANGE, INC. OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. I MAY ALSO SELECT ANY OTHER NATIONAL SECURITIES EXCHANGE'S ARBITRATION FORUM UPON WHICH PAINE-

---

1. PaineWebber is a Delaware corporation with its principal place of business in New York; the Landays are residents of Massachusetts. The amount in controversy, exclusive of costs and interests, exceeds $50,000.

2. Charles Landay had inherited a large block of stock in Stride Rite Corporation from his grandfather, the founder of the corporation. (*See* Landay Aff. ¶ 2; Verified Compl. ¶ 9.) In 1982, this stock was Charles Landay's "sole significant asset (apart from [his] house)". (Landay Aff. ¶ 2.)

3. I note that the record copy of the Agreement shows a date of execution of "6/13/90". Nevertheless, the parties do not dispute that such an agreement was executed upon the Landays' opening their accounts with PaineWebber and, in any event, the terms of the Agreement itself embrace transactions made prior to the Agreement's execution.

WEBBER IS LEGALLY RE-QUIRED TO ARBITRATE.... SUCH ARBITRATION SHALL BE GOVERNED BY THE RULES OF THE ORGANIZATION CONVENING THE PANEL. ...

(Verified Compl.Ex.D.) The Agreement also states (in bold) at Clause 17 that "[t]his agreement and its enforcement shall be construed and governed by the laws of the State of New York". *Id.*

On February 2, 1994, the Landays filed a Statement of Claim ("the Claim") with the National Association of Securities Dealers, Inc. ("NASD"). The Claim sought

> to recover losses sustained by the Landays and to recoup the unjust enrichment of PaineWebber and Collins arising out of the respondents' conduct in recommending investments, including 25 separate limited partnerships, which were unsuitably risky and illiquid in light of both the Landays' financial position and their investment objectives. The respondents induced these investments by abusive sales practices, including misrepresentation and failures to disclose information ... The purpose of respondents' wrongful activity was to increase their profits far beyond that which they would have earned had they fulfilled their duty to the Landays.

(Verified Compl.Ex. E at 1.) The 25 complained-of limited partnerships investments identified by the Landays in the Claim were made at various times from 1983 to 1990, at a total of $1,076,900. *Id.* at 2–3. Claiming a loss in principal of over $500,000 and an additional loss of return of over $300,000 had their funds been "invested in conformity with their investment objectives", the Claim further asserts that the Landays

> failed to discover respondents' wrongdoing until the summer of 1993 when publicity relating to the SEC's action on Prudential Securities' limited partnerships reached their attention. Prior thereto and continuing thereafter the respondents fraudulently concealed their wrongdoing in many ways, including 1) concealment of the fact that the investments were rapidly declining in value; 2) mischaracterization of return of principal as income; and 3) repeated attempts by Collins in person to

reassure the Landays that their investments were sound and would turn out all right if they held on.

*Id.* at 4. This conduct, the Claim states, violated, *inter alia*, the Securities Exchange Act, the Massachusetts Securities Act, Mass. Gen.L. ch. 93A, Collins' fiduciary duty to—and contract with—the Landays, and, where not intentionally fraudulent, constituted negligence. *Id.* at 4–5. For relief, the Claim seeks an award embracing lost principal plus market-adjusted income, punitive damages, interest, costs, and attorneys' fees. *Id.* at 5.

## II

As the Supreme Court last year reiterated, "the basic purpose of the Federal Arbitration Act ["FAA"] is to overcome courts' refusals to enforce agreements to arbitrate." *Allied–Bruce Terminix Cos. v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). Thus, the Court has held that the FAA displaces state law to the contrary, *Southland Corp. v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984), and ensures that agreements will be enforced according to their terms "even if a rule of state law would otherwise exclude such claims from arbitration," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995).

However, whether there is an obligation in the first place to arbitrate " 'is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The resolution of this question "is undeniably an issue for judicial determination[:] Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418.

This question of "arbitrability" was examined last term by the Supreme Court in *First Options of Chicago v. Kaplan*, —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). There, the Court found that where a dispute had arisen over whether a party had *in fact signed* an arbitration agreement, that the "arbitrability" question should be resolved by a court, not arbitrators. The Court distinguished between two issues:

Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.... In this manner the law treats silence or ambiguity about the question "who (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this latter question the law reverses the presumption. (citation omitted) ... "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

*First Options*, 115 S.Ct. at 1924 (citations omitted). The Court concluded further that the presumption of resolving doubts in favor of arbitration should be applied in situations where the parties have a valid arbitration agreement in place at least for some issues. *Id.* Presumably, at that point, the question of "arbitrability" (i.e., whether the parties intended to have an agreement to arbitrate in the first place) is undisputed and the question to be answered concerns the scope of the agreement. This policy is justified, the Court reasoned, given the "law's permissive policies in respect to arbitration." *Id.* See also *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994) (finding that once an "agreement has been proven and the protagonists identified" subsequent doubts over the scope of arbitration should be resolved by the arbitrators). Moreover,

Such a presumption is *particularly applicable where the clause is [] broad* ... [e.g., where it] provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder...." [quoting arbitration clause *sub judice*].

In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

*AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. at 1354–55) (emphasis added).

■ The arbitration clause at issue here, with its provision that "*any and all controversies* which may arise between [the parties] concerning any account, transaction, dispute or the construction, performance or breach of this or any other agreement ... shall be determined by an arbitrator," (emphasis added), is plainly as "broad" as the arbitration clause at issue in *AT & T Technologies*, if not more so. There is no "express provision" excluding the Landays' particular claim for recoupment of funds stemming from the alleged wrongful inducement of unsuitable investments. To the contrary, such claims fall squarely within the plain meaning of the contractual agreement to submit "any and all" account or transaction-related controversies to arbitration.

As a matter of basic contract interpretation, therefore, I find that the arbitration provision in the parties' agreement clearly embraces the Landays' Claim. There is indeed no "arbitrability" dispute. Nevertheless, PaineWebber contends that the Landays should not be permitted to proceed to arbitration for essentially two reasons: A) that the bulk of the Landays' Claim is *per se* ineligible for arbitration under Section 15 of the NASD Code of Arbitration Procedure, and B) that the Claim fails to state a claim on which relief can be granted and is therefore not arbitrable. PaineWebber additionally asserts C) that New York law prohibits the award of punitive damages in arbitration. I address these contentions *seriatim.*

### A. Eligibility Determination

Section 15 of the NASD Code of Arbitration Procedure provides that

[n]o dispute, claim, or controversy shall be eligible for submission to arbitration under

198

this Code where six (6) years have elapsed from the occurrence of the event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

§ 15 NASD Code.

 Citing this provision, PaineWebber notes that fourteen of the Landays' twenty-five complained-of investments were made prior to 1988, more than six years prior to the February 1994 filing of their Claim.[4] Hence, PaineWebber contends, "it is clear as a matter of law that the Landays' pre–1988 claims are not eligible for arbitration." (Pl.'s Mem. in Supp. of Mot. for Prelim.Inj. at 7.) Furthermore, responding to the Landays' assertion that they "failed to discover [Paine-Webber's] wrongdoing until the summer of 1993", (Pl.'s Mem. in Supp. of Mot. for Prelim.Inj., Ex. A, Statement of Claim at 4), PaineWebber maintains that because the six-year requirement set forth in § 15 is a "rule of 'eligibility,' and not a statute of limitations, the requirement cannot be tolled." (Pl.'s Mem. in Supp. of Mot. for Prelim.Inj. at 7.) The Landays, meanwhile, contend that such issues of limitation are for the arbitrators, not the courts, to determine.

Before addressing these contentions, I must first determine the body of substantive law by which I am to be guided. As noted above, Clause 17 of the parties' Agreement provides that "[t]his agreement and its enforcement shall be construed and governed by the laws of the State of New York". And there is little question that lower New York state courts have concluded that under New York law, § 15 is considered a non-tollable eligibility requirement the satisfaction of which is to be determined by the courts, not arbitrators.[5] To the degree that this state

court view reflects a determination regarding arbitrability inconsistent with the FAA, I must decline to follow it. In a dispute involving an arbitration agreement pursuant to a contract implicating interstate commerce, the FAA and federal common law developed thereunder properly apply to determine the scope of an arbitrable issue:

> Federal law in the terms of the Arbitration Act governs th[e] issue [of arbitrability] in either state or federal court. Section 2 is the primary substantive provision of the Act, declaring that a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. [footnote omitted]. Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration within the coverage of the Act.

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Since *Cone*, the Supreme Court in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989), has held that the FAA does not prevent parties to an arbitration agreement from choosing to abide by state rules of arbitration or courts from "enforcing those rules according to the terms of the agreement ... even if the result is that arbitration is stayed where the [FAA] would

---

4. (*See* Pl.'s Mem. in Supp. of Mot. for Prelim.Inj., Ex. A, Statement of Claim at 2–3 (providing list with dates of investments, fourteen of which are indicated as prior to 1988.))

5. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma (Sumi),* —— A.D.2d ——, 630 N.Y.S.2d 724 (1 Dept.1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeChaine,* 194

A.D.2d 472, 600 N.Y.S.2d 459 (1 Dept.), *leave to appeal denied,* 82 N.Y.2d 657, 624 N.E.2d 694, 604 N.Y.S.2d 556 (1993); *Prudential Bache Securities v. Archard,* 179 A.D.2d 652, 579 N.Y.S.2d 890 (2 Dept.), *leave to appeal denied,* 80 N.Y.2d 754, 600 N.E.2d 633, 587 N.Y.S.2d 906 (1992); *but see Rockland County v. Primiano Const. Co., Inc.,* 51 N.Y.2d 1, 409 N.E.2d 951, 431 N.Y.S.2d 478 (1980).

otherwise permit it to go forward."[6] But, the issue always turns on the construction of the terms of agreement.

The First Circuit in *Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6 (1989), has held that where the scope of an arbitration agreement is disputed,

> the contract's choice-of-law provision does not require us to determine the [punitive damages] question by looking to the law of the chosen forum [ ]. Rather, we, like [a number of other courts], look to federal common law for our answer. We agree ... that both the parties' adoption of the [American Arbitration Association] rules ... [citations omitted] and the general canon that federal law governs the construction of arbitration agreements [citations omitted] support this conclusion. [Where] the issue in the case [ ] focuses precisely on the scope of the arbitration agreement ... [w]e are obliged to apply the "settled federal rule" that "due regard must be given to the federal policy favoring arbitration, and ambiguities as in favor of arbitration." [quoting *Volt*].

*Id.* at 11, n. 5. *Cf. McCarthy*, 22 F.3d at 355–56 and n. 5 (question "which involves the interpretation of an arbitration provision touching upon matters of interstate commerce, must be resolved according to federal law"; state law, however, is not an "irrelevancy" and may be borrowed from in accordance with choice-of-law principles where not in conflict with "some discernible federal policy"); *see also Volt*, 489 U.S. at 488, 109 S.Ct. at 1260 (Brennan, J. dissenting) ("normal purpose of [ ] choice-of-law clauses [such as in *Volt* contract] is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law").

Accordingly, I turn to federal law to determine the impact of § 15 on the scope of the instant parties' agreement to arbitrate.

I recognize that PaineWebber's position has now found varying degrees of acceptance under varying types of analysis in five circuits. *See Merrill Lynch Pierce Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381 (11th Cir. 1995); *Securities Service Network, Inc. v. Cromwell*, No. 94–5778, 62 F.3d 1418, 1995 WL 456374 (6th Cir. Aug. 1, 1995) (unpublished); *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649 (6th Cir.1993); *PaineWebber, Inc., v. Allen*, 888 F.Supp. 53 (E.D.Va.1993), *aff'd*, 45 F.3d 427 (4th Cir. 1995); *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir.1992); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3rd Cir. 1990). But the issue presents a clear split in the circuits because at least three circuits reject the PaineWebber position. *See, e.g., Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 754 (5th Cir.1995); *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312–1313 (8th Cir.1994); *O'Neel v. National Association of Securities Dealers, Inc.*, 667 F.2d 804, 807 (9th Cir.1982).

In *Cohen* and *Cromwell*, the Eleventh and Sixth Circuits, respectively, rely on a reading of *First Options*. Both reiterated that *First Options* requires "clear and unmistabl[e] evidence" before arbitrators can decide "arbitrability." *Cohen*, 62 F.3d at 383–85; *Cromwell*, 1995 WL 456374, at *2–3. In turn, both courts rejected arguments that NASD Code § 35, which provides that "[t]he arbitrator shall be empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties," was sufficient evidence that the parties clearly and unmistakably intended for § 15 to be resolved by arbitrators.[7] *Id.*

---

**6.** In *Volt*, however, the Court did not itself interpret the terms of the parties' agreement; rather it accepted without review the California Court of Appeal's determination that, in choosing that the contract would be governed by the law of California, the parties intended for California rules of arbitration to also apply. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 472, 109 S.Ct. 1248, 1252, 103 L.Ed.2d 488 (1989). *Compare Mastrobuono v. Shearson Lehman Hut-*

*ton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995) (finding that if contractual intent is ambiguous, doubts should be resolved by arbitration following the FAA).

**7.** I note that the Eighth Circuit in *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312–1313 (1994) has concluded, by contrast, that § 35 was sufficient evidence that the parties clearly intended for arbitration to decide all issues of timeliness.

Both courts misconstrue the *First Options* distinction between a) disputes over whether there is any agreement to arbitrate in the first place ("arbitrability") and b) disputes where a valid arbitration agreement exists but there are secondary questions concerning scope. As *First Options* established, all doubts concerning the latter should be resolved in favor of arbitration, and, in fact, do not involve "arbitrability." *See* —— U.S. at ——, 115 S.Ct. at 1924. Under this reasoning, timeliness disputes generated between parties to valid arbitration agreements should presumptively be resolved through arbitration.[8]

While *Cohen* conceded that § 35, together with § 15, creates an ambiguity, it found that "an ambiguity is insufficient to override the presumption that courts determine arbitrability." *Cohen,* 62 F.3d at 384. I cannot agree. *First Options* clearly holds that ambiguity surrounding the scope of a valid arbitration agreement should be governed by a presumption that resolves doubts in favor of arbitration. —— U.S. at ——, 115 S.Ct. at 1924 (citing *Cone* ). *See also Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1218 ("due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration") (quoting *Volt,* 489 U.S. at 476, 109 S.Ct. at 1254). Moreover, in *Mastrobuono* the Court observed that arguably ambiguous arbitration agreements, like other private contracts, are to be construed against the drafter. —— U.S. at ——, 115 S.Ct. at 1219.

Prior to the Supreme Court's arbitration decisions last term, the Seventh Circuit in *Sorrells* articulated a somewhat different distinction in holding that timeliness issues should be resolved by a court. *Sorrells* cited a prior Seventh Circuit case, *PaineWebber Inc. v. Farnam,* 870 F.2d 1286, 1292 (7th Cir.1989), which relied on a letter from an NASD Staff Attorney, stating that " 'the NASD will not process a claim that falls wholly outside the six year period' ", to conclude that " 'the NASD reads Section 15 [ ] to be an eligibility requirement rather than a statute of limitations. . . . Section 15 therefore serves as an absolute bar to claims submitted for arbitration more than six years after the event which gave rise to the dispute.' " *Sorrells,* 957 F.2d at 512. Unlike a statute of limitations, the *Sorrells* court concluded, "an eligibility requirement cannot be tolled." *Id.* at 513.

To buttress this finding, the *Sorrells* court next examined a 1984 amendment to Section 18 of the NASD Code. The amendment provided that the six year limitation would not apply where parties had submitted the dispute to a court, and would not run while the court retained jurisdiction of the matter. Interpreting the amendment's effect, the Seventh Circuit found it to be

> precisely the one the NASD itself advanced in proposing the change. The NASD stated that
>
>> ' . . . [t]he proposed amendment [ ] would permit a court [ ] to direct that the claim be resolved by arbitration. Currently, if the claim is six years old or more, the [NASD] . . . could not accept the matter for arbitration. The proposed rule should make the Code's time limitation co-extensive with various state statutes of limitations and permit all securities-related disputes which are eligible for a judicial disposition to be resolved by arbitration.'

*Id.* (quoting Securities and Exchange Commission, Form 19b–4, Proposed Rule Change by NASD, File No. SR–NASD–84–16, pp. 8–9). Sections 15 and 18 together, the *Sorrells* court found, indicated that the six year bar could be overcome only where a court of competent jurisdiction ordered the claim to arbitration; thus, where a party chooses to submit its claim first to arbitration instead of to a court, as in *Sorrells,* the exception does not apply and the bar is absolute. *Id.* at

---

**8.** While noting a split among the courts over the characterization of § 15 as a procedural time bar (a matter for arbitrators) or as a substantive "eligibility" requirement (a matter for courts), the Eighth Circuit in *Freel* declined to address the issue "head-on", and instead relied entirely

on § 35. 14 F.3d at 1312, n. 2. *See also Bakk v. Principal Financial Securities, Inc.,* 892 F.Supp. 1206 (D.Minn.1995). As will appear below, I find the "procedural"/"substantive" distinction does not, in any event, assist in a clear-eyed analysis of the issues.

513–14. Accordingly, the Seventh Circuit concluded, "Section 15 limits the range of disputes the parties contractually agreed to arbitrate, thus limiting the jurisdiction of the NASD arbitrators." *Id.* at 514.

I do not find this reasoning persuasive. First, I note that the authorities from which the Seventh Circuit draws its ultimate conclusion that Section 15 is an "eligibility" requirement that cannot be tolled—the letter of a NASD Staff Attorney and comments regarding the Section 18 amendment—are neither binding nor conclusive, particularly with regard to tolling.[9] By contrast, the Sixth Circuit in *McCoy*, while agreeing that the question of eligibility under Section 15 is for courts to decide, explicitly found that "Section 15 is not akin to a statute of repose", and so remanded to the district court for findings on questions of fraudulent concealment. 995 F.2d at 651. *Compare Humphrey v. Prudential Ins. Co. of America,* 1993 WL 275213, at * 2 (E.D.Va.) (while ruling that Section 15 is "procedural" and therefore a matter for arbitrators, noting that "this limitations period is not subject to 'tolling' "), *appeal dismissed,* 4 F.3d 313 (4th Cir.1993).[10]

Second, to the extent that *Sorrells* rests on authority that is less than conclusive, its holding tends to repudiate the firmly established principle that " 'doubts [are to] be resolved in favor of arbitration' ". *McCarthy,* 22 F.3d at 355 (quoting *Cone* ).[11]

Indeed, the conclusion that time-bar defenses do not limit an arbitrator's jurisdiction, has been adopted in varying forms and degrees by both the Supreme Court and a number of circuits. *See Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42 (FAA mandates that "doubts concerning the scope of arbitrable issues [ ] be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability"); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2nd Cir.1991) (holding validity of time-bar or limitations defenses, "whether stemming from the arbitration agreement, arbitration association rule, or state statute", is issue for arbitrators, not courts)[12]; *County of Durham v. Richards & Associates, Inc.,* 742 F.2d 811, 815 (4th Cir.1984) (finding limitation defense that claim was outside contract's two-year duration is for arbitrators); *Smith Barney Shearson, Inc., v. Boone,* 47 F.3d 750, 754 (5th Cir.1995) (holding § 15 to be a procedural rule for arbitrators to assess); *O'Neel v. National Association of Securities Dealers, Inc.,* 667 F.2d 804, 807 (9th Cir.

9. Indeed, on the question of tolling, the NASD's excerpted statement of intention concerning the purpose of the Section 18 amendment admits of a different interpretation than that given it by the Seventh Circuit. In stating that prior to the amendment it could not accept six-year old matters for arbitration, but that thereafter the time limit would be "co-extensive with various state statutes of limitations", permitting all "disputes eligible for a judicial disposition to be resolved by arbitration", the NASD arguably saw itself as *extending* the availability of tolling considerations to the courts.

10. Another circuit arguably aligned with Paine-Webber's position, the Third Circuit in *Paine-Webber v. Hartmann,* 921 F.2d 507 (3rd ᛫ Cir. 1990), did not address the question of tolling. In that case, the court was asked to construe Rule 603 of the New York Stock Exchange Department of Arbitration Rules, which contains language identical to § 15. In light of the Seventh Circuit's reading of § 15 as an "eligibility" requirement, the court concluded that it was "satisfied that the district court did not commit clear error in interpreting Rule 603 [similarly]." *Id.* at

514. "However," the court stated, "our holding is no more expansive than this. Language less distinct than 'eligible for submission to arbitration' might well be insufficient to overcome the strong jurisprudential pull towards arbitration." *Id.*

11. Moreover, insofar as the Seventh Circuit's interpretation leads it to conclude that the only possible key to lifting the six-year bar is to apply first to a court for judicial dispensation, and that by proceeding straight to arbitration a claimant will foreclose even that option, such an interpretation is perversely at odds with "the federal policy favoring arbitration" and "Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 22, 103 S.Ct. 927, 941, 940, 74 L.Ed.2d 765 (1983).

12. *But see PaineWebber Inc., v. Richardson,* No. 3104, 1995 WL 236722 (S.D.N.Y. Apr. 21, 1995) (choosing not to follow *Wagoner* and stating, incorrectly, that no federal Court of Appeals has found § 15 to be an issue for arbitrators).

1982) (finding five-year time limit for submission to arbitration is a defense for arbitrator's consideration).[13]

Whether styled as an arbitrating body's "eligibility" requirement or some other form of time bar, these provisions afford no rationale to carve out aspects of disputes for court resolution when disputes generally are the subject of an arbitration agreement between the parties.[14]

The wisdom of this approach becomes evident when one considers that attempts to resolve time-limitation issues will often lead to an entanglement in the merits of the dispute. As the Supreme Court has made clear, courts are obligated to steer clear of the merits determinations, which should be reserved for the arbitrator when the parties have agreed to arbitrate:

> [I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's [plaintiff's] claim that the employer [defendant] has violated the [collective-bargaining] agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business

weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

*AT & T Technologies,* 475 U.S. at 649–50, 106 S.Ct. at 1418–19 (quoted case omitted).

I find nothing either in the terms of the parties' agreement or in Section 15 itself which compels the conclusion that issues of "tolling" are precluded from consideration under Section 15's six-year eligibility requirement. The Landays here assert that due to acts of fraudulent concealment they were unable to discover their cause of action until 1993. If one accepts tolling as an appropriate consideration, therefore, the issue of whether their claims are time-barred cannot be resolved without inevitable engagement on the merits of the claim. *See, e.g., Ohio Co. v. Nemecek,* 886 F.Supp. 1342, 1348 (E.D.Mich.1995) (finding that despite Sixth Circuit precedent reserving timeliness issues to courts, sufficient pleading of fraudulent concealment would send a case directly to arbitration). As the Supreme Court observed in the context of instructing courts to

---

**13.** *See also Bakk,* 892 F.Supp. at 1209–11 (noting § 35 of the NASD Code providing that arbitrators are empowered to interpret the applicability of all Code provisions, including § 15, is evidence of the parties' clear intent that the timeliness issue go to arbitration; citing *First Options* ); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Shaddock,* 822 F.Supp. 125 (S.D.N.Y. 1993) (FAA requires that question of time-bar be submitted to arbitrator notwithstanding parties' choice-of-law provision).

**14.** In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), the Supreme Court held that once it is determined that the "substantive" nature of the claim compels arbitration, "procedural" questions regarding whether the proper grievance procedures were timely followed are for the arbitrator to resolve. Several circuits, including the First, have thus found that such time limit defenses are for arbitrators. *See, e.g., Local 285, Service Employees Inter. Union, AFL–CIO v. Nonotuck Resource Assoc., Inc.,* 64 F.3d 735, 738 (1st Cir.1995) ("substantive arbitrability refers to whether a dispute involves a *subject matter* that the parties have contractually agreed to submit

to arbitration.... Procedural arbitrability, on the other hand, concerns such issues as [whether procedures have been followed]") (emphasis added) (citing *Wiley* ). It may be argued that these cases are distinguishable as involving only "procedural" time limits, as opposed to "substantive" ones. It is apparent, however, courts differ as to whether statutes of limitations (or "eligibility" requirements) are properly considered "substantive" or "procedural". Moreover, given that the scope of an arbitrator's jurisdiction is defined *ab initio* by the terms of the parties' agreement, I find it difficult to discern a justification for leaving to arbitrators those matters involving mere "procedural" time limits explicitly defined by the parties, while reserving to courts defenses invoking so-called "substantive" time limits that may or may not have been contemplated by the parties. This is particularly the case where, as here, there is an argument that the arbitral body which established the "substantive" time limit and before whom the parties agreed to arbitrate has explicitly reserved the application thereof to itself.

leave "procedural" time-limit questions to the arbitrator, such a project would

> require[ ] that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts [ ] be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result. ... Reservation of 'procedural' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort. In addition, the opportunities for deliberate delay and the possibility of well-intentioned but no less serious delay ... are clear. ... [S]uch delay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties ... and contrary to the aims of national [labor] policy.

*John Wiley & Sons, Inc.*, 376 U.S. at 557–58, 84 S.Ct. at 918–19.

Even setting aside the question of tolling, time consuming issues of judicial entanglement can arise when courts are invited to fact find regarding the predicates for a time bar. Under Section 15, the six-year period is measured from "the occurrence of the event giving rise to the act or dispute, claim or controversy." Such a moment, however, is seldom self-defining. Thus, while in the instant case it may be clear that, absent considerations of tolling, certain of the Landays' investments are well beyond the six-year limit, in other cases the resolution of this question will itself lead to certain engagement with the merits of the dispute. *See, e.g., Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 890 (2d Cir.1972) (in a 10b–5 action, "purchase or sale" occurs not necessarily when the securities are actually transferred and paid for, but rather when there has been a "commitment" by the parties to make the transaction); *Humphrey v. Prudential Ins. Co. of America*, Civ. A. No. 2:92cv178, 1993 WL 275213, n. 4 (E.D.Va.1993) (noting that NASD/NYSE six-year term requires resolution of "whether the period begins at the sale of the security or when the 'cause of action accrues (i.e. through some later misrepresentation or fraud)'", and noting that the NYSE

measures "from sale" while the Fourth Circuit "appears to leave such inquiries to the arbitrator"), *appeal dismissed*, 4 F.3d 313 (4th Cir.).

For the foregoing reasons, I conclude that the question of whether Section 15 of the NASD Code renders certain of the Landays' claims ineligible for an arbitration award is a question to be determined by the arbitrator rather than the court. PaineWebber's objection to the arbitration on the ground that the bulk of the Landays' claim is ineligible is therefore rejected.

### B. *Failure to State a Claim*

In an effort to demonstrate that the Landays have failed to state a claim upon which relief can be granted, PaineWebber asserts, *inter alia*, that i) their claim for breach of fiduciary duty is time-barred by the three-year statute of limitations in tort which cannot be tolled because the Landays were on notice of potential harm, (Pl.'s Mem. in Supp. of Mot. for Prelim.Inj. at 9–10); ii) under New York law a broker has no fiduciary duty to apprise his customer of all post-investment financial developments relating to the customer's accounts, *id.* at 10–12; and iii) the Landays were "sophisticated investors" who exercised full control over their non-discretionary accounts and so were not "misled" or "induced" into "unsuitable" investments. *Id.* at 14–18. Regarding the Landays' claims under Mass.Gen.L. ch. 93A and the Massachusetts Securities Act, Mass. Gen.L. ch. 110A, PaineWebber further asserts that a) the Landays are not permitted to assert Massachusetts statutory claims, b) the Landays failed to make a written demand under ch. 93A, § 9(3), which is prerequisite to a ch. 93A claim, c) ch. 93A does not extend to securities claims arising before 1988, and d) the Landays cannot meet the two-years-within-contract-of-sale statute of limitations set forth at ch. 110A, § 410(e) or show that PaineWebber had the requisite "scienter". *Id.* at 13–14.

As is evident from their description, these assertions go directly to the merits of the Landays' Claim. The extended discussion in section II.A. concerning the arbitrability of time-limitations aspects of otherwise arbitra-

ble disputes makes plain that objections based upon these assertions are inappropriate to a court's determination when the parties have entered into a broad arbitration agreement, like that at issue here. Specifically, as *First Options* emphasized, when there is a "valid arbitration agreement" in place, such "merits-related dispute[s]" are presumptively appropriate for arbitration. — U.S. at —, 115 S.Ct. at 1924. *See also AT & T Technologies,* 475 U.S. at 649–50, 106 S.Ct. at 1418–19; *General Textile Printing & Processing Corp. v. Expromtorg Inter. Corp.,* 891 F.Supp. 946, 952 (S.D.N.Y.1995). Accordingly, I reject Paine-Webber's objections to arbitration on grounds that the Landays have failed to state a claim upon which relief may be granted. That is a matter for the arbitrator to determine.

### C. *The Availability of Punitive Damages*

■ As PaineWebber observes, New York law prohibits the recovery of punitive damages in arbitration. *See, e.g., Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 832, 353 N.E.2d 793, 794 (1976); *Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117, 121–22 (2nd Cir.1991) (citing *Garrity* ); *Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512, 517 (2nd Cir.) (same), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991). Thus, Paine-Webber maintains, because the parties' Agreement is governed by New York law, the Landays' claim for punitive damages must be struck down.

Last term the Supreme Court directly addressed this issue in *Mastrobuono.* — U.S. at —, 115 S.Ct. at 1215. As in this case, *Mastrobuono* involved a claim filed with the NASD, a New York choice-of-law clause, and the issue of punitive damages. The Court held that the FAA ensures that an arbitration agreement will be enforced according to its terms "even if a rule of state law would otherwise exclude such claims from arbitration." *Id.,* 115 S.Ct. at 1216. The Court reiterated that the FAA's purpose is "to overcome courts' refusals to enforce agreements to arbitrate." 115 S.Ct. at 1215. While emphasizing that parties are free to structure their arbitration agreements like any other private contract, the Court found that where an agreement is ambiguous (i.e., (a) a New York choice-of-law clause, (b) no overt proscription of punitive damages, and (c) broad language that "any controversy" between the parties "shall be settled by arbitration" in accordance with NASD rules), punitive damages should be allowed.[15] *Id.,* 115 S.Ct. at 1217.

The Supreme Court's *Mastrobuono* decision appears to have been presaged by the First Circuit in *Raytheon.* There, as here, the parties' contract contained a broad arbitration agreement requiring that "all disputes" be settled through arbitration under the rules of the AAA; there was no explicit reference to punitive damages; however, the parties had provided that California law, which prohibits punitive damage awards in arbitration, would govern their agreement. The First Circuit in *Raytheon* drew no distinction between the issue of punitive damages and scope of arbitration. Rather, it found that the latter embraced the former and that, as a consequence, federal law prevailed over the forum law otherwise agreed upon in the parties' choice-of-law provision. *Raytheon,* 882 F.2d at 11, n. 5.

The First Circuit in *Raytheon* observed that AAA rules explicitly gave to arbitrators the discretion to grant any remedy they found 'just and equitable within the terms of the agreement of the parties.' *Id.* at 9–10 (quoting rule). Placing this grant of authority against the background of a liberal federal policy favoring arbitration, the First Circuit allied itself with other courts that have found that an agreement's choice-of-law provision specifying a forum which did not allow punitive damages "d[oes] not limit the force of AAA Rule 42 or render punitive damages no longer 'within the scope of the agreement of

---

**15.** The Court observed that the NASD rules nowhere prohibit the award of punitive damages. In fact, the Court took note of the Seventh Circuit's observation that NASD arbitrators receive a manual outlining the frequency of punitive damages as a remedy in arbitration. *Mastrobuono,* 115 S.Ct. at 1218.

the parties.'" *Id.* at 11–12 (quoting rule) (citations omitted).[16]

Applying the Supreme Court's decision in *Mastrobuono* and adhering to the First Circuit's reasoning in *Raytheon,* I conclude that the agreement of the parties does not prohibit the award of punitive damages.

### III

### CONCLUSION

For the reasons set forth more fully above, the plaintiff's motion for a preliminary injunction is DENIED; the defendants' motion for an order compelling arbitration is GRANTED.

---

**16.** The parties here, of course, have elected to arbitrate under the NASD Code. And, unlike the AAA Rules at issue in *Raytheon,* the NASD Code does not speak explicitly to the matter of damages. The Landays observe that the NASD Rules of Fair Practice Article III, § 21f(4) provides that

> [n]o agreement shall include any condition which limits or contradicts the rules of any self-regulatory organization or limits the ability of a party to file any claim in arbitration or limits the ability of the arbitrators to make any award.

(*See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Prelim.Inj. at 11.) However, this provision only applies to agreements executed after September 7, 1989. *See Mastrobuono,* 115 S.Ct. at 1218, n. 6. Here, there is some discrepancy as to when the operative agreements were executed, despite the date indicated on the copy before me. *See* note 3 *supra.* Thus, § 21f(4) may be inapplicable, at least in part, because the Landays' accounts were first opened in 1983.