**DEAN WITTER REYNOLDS, INC., et al.**

v.

**Einar IVERSON.**

**Civil Action No. 95–30129–MAP.**

United States District Court,
D. Massachusetts.

Feb. 1, 1996.

Adam J. Bookbinder, David C. Boch, Bingham, Dana & Gould, Boston, MA, for Plaintiffs.

Julie Larson Gutowski, Paul H. Rothschild, Bacon & Wilson, P.C., Springfield, MA, for Defendant.

*MEMORANDUM REGARDING DEFENDANT'S MOTION TO DISMISS OR STAY PENDING ARBITRATION AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

(Docket Nos. 3–1, 3–2 & 9)

PONSOR, District Judge.

## I. INTRODUCTION

This case arises out of a dispute between the defendant, Einar Iverson and his former broker, James Vinick and Vinick's employer, Dean Witter Reynolds, concerning certain allegedly improper investment transactions. The plaintiffs have filed this action for declaratory and injunctive relief to prevent Iverson from submitting his claims to arbitration. Iverson, in response, has filed a motion to dismiss the action, and the plaintiffs (conceding that at least some of Iverson's claims *are* arbitrable) have filed a motion for partial summary judgment.

The plaintiffs argue that, due to their untimeliness, the claims in dispute are not within the scope of the arbitration clause and are not permitted by the rules of the forum that the defendant has selected. Since the claims are not arbitrable as a matter of law, plaintiffs contend that they will be irreparably harmed if the defendant is permitted to proceed with the arbitration.

Jurisdiction is based on 28 U.S.C. § 1332(a)(1). In a brief order of December 22, 1995, this court indicated its rulings on the motions—to give counsel time to prepare for the arbitration proceedings—with the promise that this memo would follow. For the reasons set forth below, this court has found that the arbitrator has authority to

hear all the claims. This decision obviously implies nothing about what the arbitrator's substantive decision should be. Per this court's Order of December 22, the defendant's Motion to Dismiss has been allowed and his Motion to Stay Pending Arbitration has been denied as moot. The plaintiffs' Motion for Summary judgment has been denied. The clerk will be ordered to enter judgment for the defendant.

## II. FACTUAL BACKGROUND

The following facts are undisputed for purposes of these motions.

Iverson met Vinick while Vinick was employed by Shearson Lehman Bros., Inc., and while Iverson was a member of the investment club for which Vinick was the club broker. While at Shearson, Vinick conducted several transactions for Iverson. Later, when Vinick became an account executive at Dean Witter, Iverson opened an account with Vinick at Dean Witter. Vinick continued to handle the Iverson account until February of 1990 when Iverson's portfolio was transferred to another investment advisor.

It is uncontested that Dean Witter and Iverson entered into a Customer Agreement which provided in pertinent part that:

> Any controversy between you and the undersigned arising out of or relating to this contract or breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, of the American Arbitration Association, or of the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect.

In addition, the parties agree that Iverson's transactions were subject to the Rules of the New York Stock Exchange. The language of Rule 603 reads:

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the action or the dispute, claim or controversy.

On March 20, 1995 Iverson filed a Statement of Claim with the NYSE alleging that between November 1983 and January 1990 Vinick recommended investments that were inconsistent with Iverson's investment objectives. As a result of these improper investments Iverson claims a loss of approximately $108,000.00.

The plaintiffs argue that any disputes arising from transactions, occurrences or events prior to March 20, 1989 are barred by the six-year limitation in Rule 603 of the NYSE. Given the manifest untimeliness of some of Iverson's claims, plaintiffs argue, it would be unfair to force them to participate in arbitration proceedings. Defendant responds that these claims may properly be placed before the arbitrator for decision.

## III. DISCUSSION

■ The central issue in this case is whether the arbitrator has the power to hear the claims, despite the fact that they appear to be outside the time period prescribed by the Rules of the New York Stock Exchange. Judge Woodlock addressed this very issue in *PaineWebber, Inc., v. Landay*, 903 F.Supp. 193 (D.Mass.1995).

In that case the plaintiff, PaineWebber, Inc., sought a preliminary injunction to prohibit the defendants from proceeding to arbitration. In support of its motion, PaineWebber argued that (1) the defendants' claims, since they were outside the six-year limitation period, were not "eligible" for arbitration, (2) the claims were deficient as a matter of law, and (3) it would be irreparably harmed if compelled to arbitrate those claims. In response, the defendants moved for an order compelling PaineWebber to arbitrate the claims. In a comprehensive and well-reasoned opinion, Judge Woodlock found the claims to be within the scope of the arbitration agreement, and he granted the defendants' motion to compel arbitration. This court has carefully reviewed *Landay* and has found its reasoning persuasive.

■ Three well-established principles lie at the foundation of this decision. First, the Federal Arbitration Act was enacted to overcome the courts' reluctance to enforce arbi-

tration agreements. *Allied–Bruce Terminix Cos. v. Dobson,* —— U.S. ——, ——, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). Second, a court cannot force parties to arbitrate disputes they have not agreed to arbitrate. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Finally, it is the duty of the court—not the arbitrator—to decide whether the parties, in fact, intended to arbitrate. *First Options of Chicago v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). With these precepts in mind, this court finds, as in *Landay,* that the dispute here is not over "arbitrability," but rather raises an issue merely of the *scope* of the arbitration agreement. This being the case, the arbitration should be permitted to go forward.

At the core of Dean Witter's argument is its notion that Rule 603 imposes an "eligibility" requirement rather than simply a time limitation. With respect to this issue (as *Landay* points out) federal law, not state law, is controlling, and the federal circuits are split.

At least five circuits have agreed with plaintiffs here, holding that the six-year rule presents a threshold "eligibility" criterion; these courts have generally concluded that disputes outside that time period may not be submitted for arbitration. Three other circuits reject this theory. *Landay,* 903 F.Supp. at 199. The First Circuit has not spoken.

The crux of the dispute rests upon the distinction between the issue of arbitrability *per se*—which, as noted above, must usually be decided by the court—and the issue of the *scope* of the arbitration agreement, which is normally to be addressed by the arbitrator. In other words, the presumption toggles in two directions depending on the issue on the table: absent clear and unmistakable evidence of an intent to the contrary within the agreement itself, the presumption favors court resolution of the question of arbitrability. However, without equally strong evidence of the parties' intent to withdraw issues bearing on the *scope* of an arbitration agreement from the arbitrator, the powerful presumption generally favoring arbitration requires that these "scope" issues be presented to the arbitrator and not litigated in court.

Justice Breyer's decision for a unanimous court in *First Options* could hardly be clearer on this point.

> In this manner the law treats silence or ambiguity about the question *"who* (primarily) should decide arbitration" differently from the way it treats silence or ambiguity about the question *"whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this later question the law reverses the presumption.

—— U.S. ——, ——, 115 S.Ct. 1920, 1924 (citations omitted).

Justice Breyer then comments on the significance of this distinction.

> But, this difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration ... one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter.

*Id.* (citations omitted).

Here, a valid arbitration agreement of some scope is conceded by the plaintiffs to exist between Iverson and the brokerage. Moreover, plaintiffs do not dispute that the agreement applies to at least *some* of the transactions raised by Iverson's March 1995 Statement of Claim. Plaintiffs merely want to fence off a portion of Iverson's claims from the arbitration process based on their supposed untimeliness. Given *First Options,* however, Judge Woodlock's conclusion in *Landay* that "timeliness disputes generated between parties to valid arbitration agreements should presumptively be resolved through arbitration," 903 F.Supp. at 200, is ineluctable. This conclusion is buttressed not only by the strong Supreme Court authority favoring arbitration generally but by

the very practical consideration that a court's efforts to penetrate the facts surrounding the issue of timeliness will often inevitably entangle the judge in the merits of the dispute.

The decision here that the plaintiffs' timeliness arguments should be presented to the arbitrator in no way contravenes the Supreme Court's decision in *A.T. & T Technologies Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), since the court is not abdicating its threshold responsibility to decide (except in limited cases) the fundamental question of arbitrability. This court has decided that the timeliness issues raised by the plaintiffs *are* arbitrable. They may be presented to the arbitrator and considered by him or her in determining the proper scope of arbitration. As noted above, the decision that the claims may all properly be *presented* to the arbitrator in no way suggests how that arbitrator should treat them or what the ultimate decision should be.

## IV.   CONCLUSION

For the reasons stated above, the defendant's Motion to Dismiss has been ALLOWED and his Motion to Stay Pending Arbitration has been DENIED as moot. The plaintiffs' Motion for Partial Summary judgment has been DENIED.