**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., David Sanford, Plaintiffs–Appellants,**

v.

**Simon L. COHEN, individually and as custodian for the accounts of Adam Cohen and Erica Cohen, Judith Cohen, individually and as custodian of the accounts of Adam Cohen and Erica Cohen, Defendants–Appellees.**

No. 93–5125.

United States Court of Appeals, Eleventh Circuit.

Aug. 30, 1995.

Jack J. Aiello, Scott J. Link, Gunster, Yoakley & Stewart, P.A., West Palm Beach, FL, for appellants.

Curtis Carlson, Carlson & Bales, P.A., Miami, FL, for appellees.

Before KRAVITCH and EDMONDSON, Circuit Judges, and EISELE *, Senior District Judge.

---

* Honorable Garnett Thomas Eisele, Senior U.S. District Judge for the District of Arkansas, sitting by designation.

KRAVITCH, Circuit Judge:

The issue presented in this appeal is whether arbitrators or courts decide the timeliness of claims sought to be arbitrated pursuant to the National Association of Securities Dealers ("NASD") Code of Arbitration. We hold that the court determines whether a claim is timely; accordingly, we REVERSE and REMAND.

## I.

Between 1985 and 1987, Simon and Judith Cohen (the "Cohens") purchased limited partnership interests from David Sanford, a financial consultant with Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch"). The Cohens and Merrill Lynch entered into a Customer Agreement requiring that all disputes between the parties be resolved by arbitration pursuant to the NASD Code of Arbitration (the "NASD Code").

In March 1993, the Cohens filed an arbitration claim with the NASD, alleging that through the use of "untrue statements and omissions," Merrill Lynch sold them various investments that were unsuitable for them and that Merrill Lynch then "fraudulently concealed the fact that the Cohens' investments had lost almost 50 percent of their value," by reporting false values from 1985 through 1991.[1] The Cohens asserted claims for: common law fraud; breach of fiduciary duty; gross negligence; violation of the Florida Securities and Investor Protection Act, Fla.Stat. ch. 517; and intentional infliction of emotional distress.

Merrill Lynch responded by filing an action in Florida state court seeking to enjoin arbitration on the ground that most of the Cohens' claims were time-barred. The Cohens removed to federal court on the basis of diversity jurisdiction, and moved to compel arbitration and stay the federal action pending arbitration. The district court held that the question of whether the Cohens' claims were time-barred was to be decided by the arbitration panel, not a federal court. The district court thus granted the Cohens' motion to compel arbitration and accordingly dismissed Merrill Lynch's suit.

## II.

Section 15 of the NASD Code provides: Time Limitation on Submission:

Section 15. No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

Merrill Lynch argues that section 15 is a substantive eligibility requirement relating to the arbitrability of claims more than six years old. It cites *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), in which the Supreme Court held that "[u]nless the parties clearly and unmistakenly provide otherwise, the question of whether the parties agreed to arbitrate is to be resolved by the court, not the arbitrator." Merrill Lynch asserts that because it never agreed that the arbitrator could determine arbitrability, the court must consider the timeliness of the Cohens' claims prior to submission to arbitration.

The Cohens counter that section 15 is not an eligibility requirement, but rather is a procedural statute of limitations and its applicability must be determined by the arbitrator. They contend that *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023 (11th Cir.1982), controls the resolution of this case. In *Belke,* this court held that "the issue of whether a request for arbitration is timely under the terms of the contract [is] an issue properly resolved by the arbitrator." *Id.* at 1028. They further contend that even if *Belke* does not control, § 35 of the NASD Code which provides that "[t]he arbitrators shall be empowered to interpret and

---

1. The Cohens alleged that between 1985 and 1991, Merrill Lynch reported that their investments were worth $230,000, even though Merrill Lynch and Sanford knew that the investments had declined in value by more than $100,000. The Cohens contended that Merrill Lynch finally reported the "true value" of their investments ($133,450) in January, 1992.

determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties," is an expression of the parties' intentions that the arbitrator should determine the timeliness of their claims.

Initially, we must determine if *Belke* controls the present dispute. In *Belke,* the plaintiff had contended that Merrill Lynch was not entitled to arbitrate its claims because it had failed to serve written notice of an intent to arbitrate within one year of when the cause of action accrued, as required by the arbitration agreement. *Id.* We held that the failure to serve notice of an intent to arbitrate was a procedural question that must be resolved by the arbitrator. *Id.* We do not believe that *Belke* controls the instant dispute, however, because the *Belke* court was not interpreting § 15 of the NASD Code. Because we are not bound by *Belke,* we must decide who determines whether a claim is timely under § 15.

Our sister circuits have grappled with this issue and reached conflicting results. The Third, Sixth, and Seventh Circuits have held that § 15 is a jurisdictional prerequisite to arbitrability that must be applied by the courts. *See PaineWebber Inc. v. Hofmann,* 984 F.2d 1372, 1374 (3d Cir.1993); *Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649, 651 (6th Cir.1993) ("time-barred claims are not 'eligible' for arbitration, and therefore the courts must decide as a threshold matter whether time remains for claimants to bring their actions"); *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 512 (7th Cir. 1992) ("Section 15 operates as an eligibility requirement which bars from arbitration claims submitted more than six years after the event which gave rise to them.").

The Fifth Circuit, on the other hand, held that § 15 is "part of the procedural requirements to arbitration and, as such, [it is] the decision of the arbitrator." *Smith Barney Shearson, Inc. v. Boone,* 47 F.3d 750, 754 (5th Cir.1995); *see also Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991) (not interpreting § 15, but noting that "*any* limitations defense—whether stemming from the arbitration agreement,

arbitration association rule, or state statute—is an issue to be addressed by the arbitrators") (emphasis in original); *O'Neel v. National Assoc. of Sec. Dealers, Inc.,* 667 F.2d 804, 807 (9th Cir.1982) (adopting Second Circuit rule that "the validity of time-barred defenses to enforcement of arbitration agreements should generally be determined by the arbitrator rather than by the court").[2]

The Eighth Circuit also has held that the arbitrator must decide the timeliness of a claim under § 15. *See FSC Securities Corp. v. Freel,* 14 F.3d 1310 (8th Cir.1994). The *Freel* court concluded that regardless of whether § 15 is procedural or substantive, "the parties' adoption of [section 35] *is* a 'clear and unmistakable' expression of their intent to leave the question of arbitrability to the arbitrators. In no uncertain terms, section 35 commits interpretation of all provisions of the NASD Code to the arbitrators." *Id.* at 1312–13 (emphasis in original).

### III.

We conclude that § 15 is a substantive eligibility requirement and join the Circuits that have determined that the court decides whether claims are timely under that section of the NASD Code. The Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.,* "establishes a 'federal policy favoring arbitration.'" *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)); *see Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 817 (11th Cir.1993). Nonetheless, "arbitration agreements are, essentially, creatures of contract." *Blue Gray Corps. I & II v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 921 F.2d 267, 269 (11th Cir.1991). Parties are therefore free to structure their arbitration agreements as they see fit and courts will not require parties to arbitrate if they have not agreed to do so. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995); *Road Sprinkler Fitters Local Union*

---

2. *O'Neel* did not construe § 15.

No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1567 (11th Cir.) ("A party cannot be required to submit to arbitration a dispute that it has not agreed to arbitrate."), *cert. denied,* —— U.S. ——, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

We thus must look to the parties' agreement and attempt to determine their intentions.[3] *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (as with any contract, parties' intentions regarding the arbitrability of a claim control). Section 15 of the NASD Code states that no dispute "shall be eligible for submission" to arbitration unless brought within six years from the occurrence or event giving rise to the dispute. The plain language of this section supports the conclusion that § 15 is a jurisdictional prerequisite to arbitration. *See Hofmann,* 984 F.2d at 1378 ("the language of § 15 unequivocally establishes a substantive limitation on the claims that may be submitted to arbitration").

The Cohens assert, however, that § 35, which provides that the arbitrator must interpret and determine the applicability of all provisions under the NASD Code, evinces a clear intent to allow the arbitrators to decide whether a claim is eligible for arbitration. We disagree.

The Supreme Court has held that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1218 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989)). Nevertheless, the Supreme Court recently reiterated that this presumption in favor of arbitration is not applicable when the question to be resolved is who decides arbitrability:

[T]he law treats silence or ambiguity about the question *"who* (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question *"whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this latter question the law reverses the presumption.

*First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (emphasis in original). Thus, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence that they did so.'" *Id.* (quoting *AT & T Technologies, Inc.,* 475 U.S. at 649, 106 S.Ct. at 1418).

We hold that section 35 is not "clear and unmistakable evidence" of the parties' intent to allow the arbitrator to determine the timeliness of the claim. *See Sorrells,* 957 F.2d at 514 n. 6 ("we do not believe that [§ 35] is a clear and unmistakable expression of the parties' intent to have the arbitrators, and not the court, determine which disputes the parties have agreed to submit to arbitration."). Section 35 is a general contract term which gives the arbitrator the power to interpret the NASD Code. Section 15, by contrast, is a specific provision, which delineates the claims that are untimely, and thus, not eligible for arbitration. "When general positions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control." *Goldberg v. Bear, Stearns & Co., Inc.,* 912 F.2d 1418, 1421 (11th Cir.1990). We conclude that, at most, section 35 creates an ambiguity as to who determines arbitrability. Because an ambiguity is insufficient to override the presumption that courts determine arbitrability, *see Kaplan,* —— U.S. at ——, 115 S.Ct. at 1924, we conclude that the district court must determine whether the dispute between the Cohens and Merrill Lynch is arbitrable.

## IV.

The Cohens purchased the limited partnership interests between 1985 and 1987. Merrill Lynch argues that the "occurrence or

---

**3.** The parties incorporated the NASD Code into their agreement, and we therefore look to the Code for guidance.

event giving rise to the act or dispute, claim or controversy," within the meaning of § 15, is the purchase of these interests, and thus, the Cohens claims are time-barred. It is not a foregone conclusion, however, that the purchase date is the relevant occurrence or event giving rise to the Cohens' claims, as neither § 15 nor any other provision of the NASD Code so provides.[4]

If the Cohens prove that Merrill Lynch reported false values for their investments through bogus statements,[5] then Merrill Lynch's act of sending the false statements, rather than the initial purchase of the investments, may be the occurrence or event giving rise to their claims.[6] *See Hofmann*, 984 F.2d at 1381 (explaining that PaineWebber's active concealment of its wrongdoing can "be viewed as an independent cause of action based on a duty owed by PaineWebber to its customers to inform them of a broker's wrongdoing"); Quinton F. Seamons, *Does Securities Arbitration Go On Forever? Eligibility and Statutes of Limitation*, 8 INSIGHTS 17, 19 (May, 1994) (noting that the Director of Arbitration of the NASD has expressed the position that "[i]t has been determined that the purchase date is not [necessarily] the event or occurrence that gave rise to [the] dispute").

On remand, the district court should examine each of the Cohens' claims in order to determine what is the "occurrence or event" giving rise to that claim.[7] The court should then determine if more than six years has elapsed from that event and send any claims that remain viable to arbitration. Although our holding may compel federal courts to

hold "mini-trials" on timeliness, which may be followed by full arbitration if the claims are not deemed time-barred, "concerns for judicial economy alone are not sufficient to justify interference with the binding agreement of the parties." *Goldberg*, 912 F.2d at 1422.

REVERSED AND REMANDED.

---

4.  Courts have concluded that because section 15 is an eligibility requirement rather than a procedural statute of limitations, claims are not subject to equitable tolling. *See, e.g., Sorrells*, 957 F.2d at 513 (Section 15 cannot be tolled); *Hofmann*, 984 F.2d at 1378 (same). Although we believe this principle to be correct, it fails to resolve the question: *what* was the occurrence or event that gave rise to the Cohens' claims.

5.  *The present record on appeal is insufficient to* allow this court to determine whether or not Merrill Lynch perpetrated a continuing fraud on the Cohens.

6.  We express no opinion, however, as to the applicable "occurrence or event" in a case in

which a broker used fraud to procure the sale of securities and then continued to conceal the fraud. In this case, if the Cohen's allegations are correct, Merrill Lynch did not merely conceal the fraud, but rather affirmatively misstated the value of the Cohens' investments over a six year period.

7.  For example, with respect to the Cohens' claim for breach of fiduciary duty, if there is such a duty, then each misrepresentation might be an event or occurrence giving rise to a claim for breach of fiduciary duty. If, by contrast, the Cohens' fraud claim is predicated solely upon the unsuitability of their purchase, then the relevant "occurrence or event" may be the investment.