**SMITH BARNEY INC., Plaintiff,**

v.

**Gerhard G. VOGELE and Ingeborg D. Vogele, Defendants.**

**Civil Action No. 96–1683–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 16, 1997.

Adam Augustine Carter, Washington, DC (Joseph A. Ingrisano, Jill A. Byrne, of counsel), for Plaintiff.

Robert L. Vaughn, Jr., Glennon, Goodman & Lebeley, L.L.P., Reston, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this case, plaintiff Smith Barney Inc. ("Smith Barney") seeks to enjoin the arbitration of disputes arising out of its provision of financial and investment services to defendants Gerhard and Ingeborg Vogele ("the Vogeles"). For the reasons that follow, no injunction is warranted and the arbitration may proceed.

### I.

After a series of financial and personal setbacks in the mid 1980s, many related to a health condition which left Mr. Vogele totally disabled, Mr. and Mrs. Vogele decided to liquidate their assets and invest the proceeds of this liquidation. Accordingly, in 1987, the Vogeles approached Shearson Lehman Brothers,[1] and specifically financial advisor Robert Bousman, to procure investment advice and services. The Vogeles allege that they informed Bousman of their financial condition and requested guidance on how to achieve their investment goals, namely stable income from the secure investment of their life savings. Then, in October of 1987, Mr. Vogele signed a Client Agreement with Shearson Lehman to open an investment account. This agreement contains a clause governing arbitration of disputes arising from Shearson Lehman's provision of financial services which reads, as follows:

> [u]nless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you, your officers, directors, agents and/or employees for me or to this agreement shall *be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers* or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect.

(emphasis added). A Client Agreement signed by the Vogeles to open a separate investment account in February 1988 includes an identical clause.

Over the next several years and, indeed, until the initiation of the instant matter, the investments purchased for the Vogeles lost substantial value. The Vogeles contend that Bousman, while working for Shearson Lehman and, subsequently, for Smith Barney, invested their assets in highly speculative ventures that did not meet their expressed investment criteria. Moreover, the Vogeles allege that Bousman, their sole source of investment advice, periodically updated their original investment portfolio throughout the 1990s without re-evaluating the propriety of the Vogeles' investments in light of their financial needs.

In 1994–95, Mr. Vogele experienced a variety of new health complications, leading the Vogeles to evaluate the status of their investments. Throughout, the Vogeles had re-

---

**1.** Shearson Lehman Brothers was the predecessor in interest to Smith Barney with respect to the Vogeles investment account.

ceived a monthly statement concerning the status of their investments. This statement included stated values of the Vogeles' investment interests subject, however, to the following *caveat:* "THE FACE AMOUNTS DO NOT NECESSARILY REFLECT CURRENT MARKET VALUE." The Vogeles contend that their efforts to obtain more detailed information were, for the most part, unsuccessful. When the precise value of their investments finally was ascertained, the Vogeles' learned that many of their investments were essentially worthless. Specifically, the Vogeles allege that approximately $80,000, which was to have been invested securely, had been improperly invested in speculative limited partnerships that had subsequently lost all or a significant portion of their value. Accordingly, on August 21, 1996, the Vogeles submitted a Statement of Claim, initiating arbitration on various claims arising from their account at Smith Barney, and electing through a Uniform Submission Agreement to subject the claims to the arbitration rules of the National Association of Securities Dealers ("NASD").

In November 1996, Smith Barney filed the instant matter, seeking declaratory and injunctive relief barring arbitration as to all of the Vogeles' claims concerning investments that were purchased between 1987 and February 1989. By Smith Barney's lights, these purchase dates render the Vogeles' claims non-arbitrable pursuant to NASD Code § 15, which provides that:

> [n]o dispute, claim or controversy shall be eligible for submission under this Code

where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy.

(emphasis added). In January 1997, Smith Barney requested a preliminary injunction barring arbitration pending resolution of the instant matter. By agreement of the parties, the arbitration was stayed, and further submissions were requested from the parties with respect to the eligibility of the Vogeles' claims for arbitration. These memoranda were received and reviewed, and the question whether any or all of the Vogeles' claims against Smith Barney are eligible for arbitration is now ripe for disposition.

## II.

The threshold question is whether a court or an arbitrator determines the eligibility of a claim for arbitration, pursuant to NASD Code § 15. This question has generated much litigation, yet little judicial consensus has emerged in either reasoning or result.[2] At present, the ten circuits considering this question have split evenly. The Third, Sixth, Seventh, Tenth and Eleventh Circuits have held that courts, not arbitrators, must decide whether claims are time-barred by § 15.[3] By contrast, the First, Second, Fifth, Eighth, and Ninth Circuits take the view that the applicability of the § 15 time bar is a question solely for the arbitrator.[4] The division among circuit courts of appeal on this question resists simple categorization. In general, however, the cases can be viewed as reflecting two different and essential interpretive disputes: (i) whether the § 15

2. *See generally,* Andrew M. Campbell, Annotation, *Securities Arbitration: Construction and Application of Self–Regulatory Organization Eligibility Rules,* 129 A.L.R. Fed. 489 (1996) (listing cases construing the eligibility of claims for arbitration under time-bar rules of NASD, the New York Stock Exchange, or the American Stock Exchange). This annotation makes no distinction between § 15 and the time-bar rule of the New York Stock Exchange, as the two provisions are identical in all relevant aspects. And courts uniformly agree that no distinction is warranted. *See, e.g., PaineWebber Inc. v. Elahi,* 87 F.3d 589, 596 n. 8 (1st Cir.1996); *PaineWebber Inc. v. Hofmann,* 984 F.2d 1372, 1378 (3rd Cir.1993).

3. *See, e.g., Smith Barney, Inc. v. Sarver,* 108 F.3d 92, 96–98 (6th Cir.1997); *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith,* 78 F.3d 474, 478 (10th Cir.1996); *Merrill Lynch, Pierce, Fenner & Smith v. Cohen,* 62 F.3d 381 (11th Cir.1995); *Smith Barney Inc. v. Schell,* 53 F.3d 807, 809 (7th Cir.1995); *PaineWebber Inc. v. Hofmann,* 984 F.2d 1372, 1374 (3rd Cir.1993).

4. *See, e.g., PaineWebber Inc. v. Elahi,* 87 F.3d 589, 601–02 (1st Cir.1996); *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1196–99 (2nd Cir.1996); *Smith Barney Shearson, Inc. v. Boone,* 47 F.3d 750, 754 (5th Cir.1995); *FSC Securities Corp. v. Freel,* 14 F.3d 1310, 1312–13 (8th Cir.1994); *O'Neel v. National Ass'n of Secs. Dealers, Inc.,* 667 F.2d 804, 807 (9th Cir.1982).

time-bar is procedural or substantive;[5] and (ii) whether the contract created by incorporation of the NASD Code reflects "clear and unmistakable" evidence of the parties intent to submit § 15 disputes to a court or an arbitrator.[6]

Despite the wealth of authority from elsewhere, this circuit has not yet squarely addressed this question. Interestingly, other courts considering the circuit split have predicted, based on analogous precedent, that the Fourth Circuit would align itself with the circuits that have concluded that § 15 questions must be submitted to the arbitrator.[7] Yet, the Fourth Circuit itself has affirmed, in an unpublished opinion, a district court that

resolved the § 15 eligibility of claims for arbitration,[8] and district courts in this circuit have fallen on both sides of the split.[9]

■ So it is evident that the threshold question whether the court or arbitrator resolves NASD Code § 15 disputes remains unsettled in this circuit. Yet, in the final analysis, it is unnecessary here to determine this threshold question, because the parties agree that their contract requires courts to determine whether claims are time-barred under § 15 and, thus, ineligible for arbitration.[10] Nor is there any doubt that it is within the parties' power to bind themselves before the Court on the resolution of the

---

5. *Compare Boone*, 47 F.3d at 754 (concluding that § 15 is question of procedural arbitrability and that procedural arbitrability questions are decided by the arbitrator), *with Cohen*, 62 F.3d at 383 ("We conclude that § 15 is a substantive eligibility requirement and join the Circuits that have determined that the court decides whether claims are timely under that section of the NASD Code.").

6. *Compare Cogswell*, 78 F.3d at 478 (concluding that the NASD Code does not provide "clear and unmistakable" evidence that parties intend § 15 questions for arbitrator), *with Freel*, 14 F.3d at 1312–13 (concluding that NASD Code provides "in no uncertain terms" that parties intend to "commit[] interpretation of all provisions of the NASD Code to the arbitrators"); *see also Elahi*, 87 F.3d at 592–601 (comparing and contrasting various circuit court approaches to the question whether courts or arbitrators decide § 15 disputes).

7. *See, e.g., Elahi*, 87 F.3d at 598 n. 10; *Cogswell*, 78 F.3d at 477 n. 4; *Edward D. Jones Co. v. Sorrells*, 957 F.2d 509, 514 n. 5 (7th Cir.1992). Circuit courts addressing the arbitration of § 15 disputes have posited that the Fourth Circuit would consider the time bar provision procedural and, thus, committed to the arbitrator. *See Elahi*, 87 F.3d at 598. This contention is based on various holdings of the Fourth Circuit in related circumstances. *See Miller v. Prudential Bache Securities, Inc.*, 884 F.2d 128, 130 (4th Cir.1989), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3240, 111 L.Ed.2d 751 (1990); *County of Durham v. Richards & Associates, Inc.*, 742 F.2d 811, 815 (4th Cir.1984)("When a limitations question is raised to defeat a motion to compel arbitration, the question is one for the arbitrator, not the courts."). In *Miller*, the panel concluded that a party's contention that the arbitrator improperly applied § 15 was immaterial, given that federal courts will not set aside arbitration in light of "mere errors of law". *See Miller*, 884 F.2d at 130. This conclusion has been viewed to

commit the application of § 15 to an arbitrator and, thus, rebut the view that § 15 is a substantive limit on an arbitrator's jurisdiction. *See, e.g., Freel*, 14 F.3d at 1312 n. 2.

8. *See PaineWebber Inc. v. Allen*, 888 F.Supp. 53 (E.D.Va.1993), *aff'd*, 45 F.3d 427 (4th Cir.) (unpublished), *cert. denied*, —— U.S. ——, 116 S.Ct. 52, 133 L.Ed.2d 17 (1995).

9. In *Cigna Securities, Inc. v. Calby*, No. 3:92CV345–P, 1993 WL 812680 (W.D.N.C.1995), and *PaineWebber, Inc. v. Allen*, 888 F.Supp. 53 (E.D.Va.1993), *aff'd*, 45 F.3d 427 (4th Cir.)(unpublished), *cert. denied*, —— U.S. ——, 116 S.Ct. 52, 133 L.Ed.2d 17 (1995), the district courts adopted the view that eligibility questions under NASD Code § 15 are to be decided by the courts. *See, e.g., Allen*, 888 F.Supp. at 54–55. Yet, in *Conroy v. Merrill Lynch, Pierce, Fenner & Smith*, 899 F.Supp. 1471 (W.D.N.C.1995), the district court reached the opposite result, concluding that § 15 disputes should be sent to the arbitrator. *Id.* at 1475–76.

10. *See* Defendant's Brief in Opposition to Plaintiff's Motion for a Preliminary Injunction, at 4–5 (December 31, 1996) ("The Vogeles agree that the initial question of arbitrability is one for judicial determination."). In agreeing that the Court resolves § 15 disputes, the Vogeles are not conceding subject matter jurisdiction. This the Vogeles could not do, as subject matter jurisdiction is a limit on the power of federal courts and cannot be conferred or waived by consent of the parties. *See, e.g., Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350. Subject matter jurisdiction exists here by virtue of diversity of citizenship among the parties. *See* 28 U.S.C. § 1332. The § 15 "jurisdiction" at issue is a matter of contract and, thus, subject to waiver.

§ 15 question, for this question, at its roots, is a matter of contract.[11] And where, as here, parties agree on the interpretation of a contract provision, a court need not engage in the interpretive exercise.[12] Accordingly, the analysis turns to whether the claims asserted by the Vogeles are eligible for arbitration, pursuant to NASD Code § 15.

### III.

■ Two general principles provide guidance on whether specific asserted claims are eligible for arbitration. First, the Supreme Court teaches that a court considering arbitrability "is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). This is so even if it appears to the reviewing court that the claims asserted are meritless or even frivolous. *Id.* Second, the Supreme Court has instructed that

> there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Id.* at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Thus, silence or ambiguity with respect to whether a particular claim is within the arbitration agreement is interpreted in favor of arbitration. *See e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–45, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Accordingly, an injunction against arbitration is appropriate only where an asserted claim "clearly falls outside of the substantive scope of the agreement." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 513 (3rd Cir.1990).

■ The limitation on arbitration asserted by Smith Barney in the instant matter is the time bar in NASD Code § 15, which bars the submission of claims for arbitration:

> where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy.

Smith Barney contends that the Vogeles' claims are not arbitrable, given that each claim concerns an investment that was purchased over six years before the filing of the Statement of Claims. And, indeed, if the "occurrence or event" giving rise to the controversy were the Vogeles' purchase of the disputed investments, then enjoining arbitration of the claims presented would be appropriate. This is so because NASD § 15's six year requirement cannot be tolled by lack of discovery or on the basis of equitable estoppel. *See, e.g., Hofmann*, 984 F.2d at 1381; *PaineWebber v. Allen*, 888 F.Supp. at 55 (citing *Caviness v. DeRand Resources Corp.*, 983 F.2d 1295 (4th Cir.1993) (statute of repose not subject to tolling)); *see also Sorrells*, 957 F.2d at 509(section 15 is eligibility requirement and thus cannot be tolled); *Hartmann*, 921 F.2d at 507 (same). Accordingly, Smith Barney contends that the "occurrence or event" of the Vogeles' claims, as defined by NASD § 15, is their purchase of the contested investments.

■ While it will often be the case that the relevant "occurrence or event" will be the purchase of an investment, no persuasive authority holds that the purchase *must* be the "occurrence or event". Indeed, in cases considering the purchase as the relevant event, it is unclear whether customers asserted any claims except for the purchase of the contested investment. *See, e.g., Sorrells*, 957

---

11. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964))(" '[W]hether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties.' ").

12. This interpretive exercise, in the contract context, unlike statutory or other contexts, is aimed at divining the parties' objectivized intent through the meaning of language they chose. Their agreement on the meaning of the language obviates any need for the exercise. of course, this would not be true in the context of a statute, where it is the legislature's objectivized intention that is relevant, not the parties'.

F.2d at 509; *Hartmann*, 921 F.2d 507; *Allen*, 888 F.Supp. at 55–56.[13] Customers did claim a right to recover for an "occurrence or event" subsequent to the purchase of investments in *Cigna Securities, Inc. v. Calby*, 1993 WL 812680 (W.D.N.C.1993). There, the customers alleged that their investment advisor (i) had not constructed a financial plan appropriate to meet their financial objectives, and (ii) had failed to provide services with due care. *Id.* at *4. The *Cigna* court found that defendants were not claiming injury from the purchase of securities, but from conduct sounding in breach of contract, breach of fiduciary duty, and negligence that occurred after they purchased their investments. *Id.* Thus, the customers' claims were arbitrable, given that the post-purchase events giving rise to these claims were within the six-year § 15 period.

Significantly, circuit courts of appeal outside of the Fourth Circuit, have rejected a per se rule that the "occurrence or event" giving rise to a dispute is always the purchase of an investment product. *See, e.g., Merrill Lynch, Pierce Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 385 (11th Cir.1995) ("It is not a foregone conclusion . . . that the purchase date is the relevant occurrence or event giving rise to the Cohen's claims, as neither § 15 nor any other provision of the NASD Code so provides.");[14] *Hofmann*, 984

F.2d at 1380–81 (recognizing that an "occurrence or event" could include actions by broker subsequent to purchase of investment). This conclusion, adopted though not discussed in *Cigna*, is logically based on the language of § 15 which does not expressly limit an "occurrence or event" to the purchase of a disputed investment. *See Cohen*, 62 F.3d at 385. Clearly, the drafters of the NASD Code could have provided that claims be brought for arbitration within six years of the purchase of the disputed investment. Their quite different choice of language is telling, and belies any conclusion that an "occurrence or event" is necessarily the date of purchase.

The Third Circuit has provided the most exhaustive discussion of the analytical path to be followed in determining whether claims involving investments purchased outside of the six-year limitation period are suitable for arbitration. *See Hofmann*, 984 F.2d at 1380–83. In *Hofmann*, the Third Circuit panel recognized that while some claims clearly fall within or outside of the six-year period, other claims present "analytical difficulties". *Id.* at 1380. These "analytical difficulties" are created where a customer claims injury from an "occurrence or event" within the six-year period related to investments purchased outside of the period. *Id.*[15]

---

**13.** For example, in *Allen*, customers of Paine-Webber contested the purchase of interests in a Virginia limited partnership. *See Allen*, 888 F.Supp. at 53–54. Eleven theories of recovery were asserted, of which all but one were related to acts, omissions or misrepresentations occurring prior to the date of purchase of the limited partnership interests. *Id.*, at 54–55. With respect to these theories of recovery, then, the court was not confronted with the question whether post-sale acts could constitute independent causes of action. The single post-sale theory of recovery asserted by the customers in *Allen* alleged a RICO violation that incorporated the sale of limited partnerships by PaineWebber to unrelated investors in an effort to allege events within the six year period. *Id.* at 55. The district court there did not hold that the purchase was necessarily the "occurrence or event" with respect to the claim, but rather that "events or occurrences" unrelated to the claimant customers could not be used to circumvent the six year eligibility requirement in that case. *Id.* at 55–56.

**14.** In *Cohen*, the panel observed:

with respect to the . . . claim for breach of fiduciary duty, if there is such a duty, then

each misrepresentation might be an event or occurrence giving rise to a claim for breach of fiduciary duty. If, by contrast, the Cohens' fraud claim is predicated solely upon the unsuitability of their purchase, then the relevant "occurrence or event" may be the investment. *Cohen*, 62 F.3d at 385.

**15.** In *Hofmann*, the claimants asserted that the following actions by PaineWebber constituted an "occurrence or event" under § 15:

(1) a broker's advice to "hold all stock" purchased outside of the six year period,

(2) a brokerage firm's active concealment of a broker's wrongdoing which took place outside of the six year period,

(3) a brokerage firm's concealment of an overly speculative portfolio,

(4) the continuation of a brokerage relationship begun outside of the six year period that was so tainted and mismanaged as to be wrongful, and

(5) the customer's discovery of the broker's wrongdoing.

*Hofmann*, 984 F.2d at 1380. The panel accepted that some of these allegations could constitute an

■ To resolve these difficulties, the panel directed the district court to determine the arbitrability of each of the customer's theories of recovery independently. In so doing, the Third Circuit panel acknowledged that this inquiry will often force courts "to walk a fine line between two rules of arbitration that are at times in tension with each other", namely, (i) that no party should be forced to arbitrate a claim it did not agree to arbitrate, and (ii) that no court should rule on the potential merits of the underlying claim, even if the claim appears frivolous. *Hofmann*, 984 F.2d at 1381. The Third Circuit concluded that to navigate this "fine line", a district court should

> generally accept a party's statement as to what constitutes a cause of action and permit the arbitration of that claim *as long as* the asserted cause of action is not *clearly* a mere tolling or discovery argument.

*Id.* Where it is clear that a claim is merely an attempt to toll the six year period, the claim is properly and necessarily enjoined. *Id.* On the other hand, claims that state a genuine, independent cause of action are to be submitted to arbitration for the arbitrators to determine whether or not the cause of action states a claim on which relief can be granted. *Id.*

Following here the analytical path of the Third Circuit in *Hofmann*, the Vogeles were directed to submit a table (i) listing each specific claim that they intend to assert in arbitration, and (ii) indicating the relevant "occurrence or event" and the date of that "occurrence or event" for each claim. Both this list and a response from Smith Barney were received and reviewed. Each claim listed alleges an "occurrence or event" within the six-year period. Thus, the arbitrability of the Vogeles' claims reduces to the question whether those claims constitute independent causes of action or merely tolling arguments. And in resolving this question, in light of the approach outlined in *Hofmann*, the Vogeles' statement as to what constitutes an independent cause of action is accepted unless that asserted cause of action is *clearly* an effort to

"occurrence or event" independent of the purchase of the investment. *Id.*

toll the period. See, *e.g.*, *Hofmann*, 984 F.2d at 1381.

The Vogeles' specify thirty-one events and occurrences that they claim constitute independent causes of action relating to their investment relationship with Smith Barney and Bousman. While the events underlying the claims vary, the causes of action asserted include breach of contract, breach of fiduciary duty, and fraud. In response, Smith Barney contends (i) that the causes of action alleged by the Vogeles' are merely discovery or tolling arguments, disguised as independent claims, and (ii) that the causes of action do not state claims for which relief can be granted.

■ The Vogeles' claims can be categorized, as follows:

(1) that Smith Barney failed to advise the Vogeles, consistent with their relationship as an ongoing investment advisor, of the suitability of their investment portfolio throughout the six year period as the value of their investments dropped and the Vogeles' specific interests were transferred and converted;

(2) that Smith Barney actively and fraudulently concealed the value of the Vogeles' investments after those investments became worthless. The Vogeles' contend this concealment took the form of reporting violations and the deliberate withholding from the Vogeles' of their financial information;

(3) that Smith Barney invested in limited partnerships with which Smith Barney had a possible conflict and failed to disclose this conflict within the six-year period as required by its fiduciary relationship; and

(4) that Smith Barney failed to conduct required periodic reviews.

The theories asserted do not attempt to recover on the basis of the original decision and advice to purchase the disputed investments.[16] And the theories of recovery are

16. While that advice might have given rise to a colorable claim, any claim based on the original purchase of the investments, or advice preceding

not "merely tolling or discovery arguments". For example, the Vogeles contend that they were harmed by Smith Barney's fraudulent conduct in concealing the status of their investments, not that the concealment entitles them to recover for an original improper purchase.[17] In sum, the claims asserted by the Vogeles' allege various acts and omissions within the six-year period that may constitute independent violations of Smith Barney's responsibilities as the Vogeles' continuing investment advisor. Thus, the Vogeles' claims are not "merely tolling or discovery" arguments.

In the alternative, Smith Barney contends that to the degree these claims are based on an "occurrence or event" within the six-year period, they do not constitute cognizable causes of action.[18] Thus, Smith Barney contends that it owed no contractual or fiduciary duty to the Vogeles and, therefore, postpurchase violations of such a duty cannot constitute an "occurrence or event." Moreover, with respect to the fraud claims, Smith Barney contends that the Vogeles do not adequately allege the elements of actionable fraud.

Smith Barney's attack on the viability of the claims alleged is wide of the mark. The merits of any particular claim is to be determined by the arbitrator, even where it appears that a claim is meritless or, indeed, frivolous. *See AT & T*, 475 U.S. at 649–50, 106 S.Ct. at 1418–19. The question whether Smith Barney had a contractual or fiduciary duty to the Vogeles, and whether such a duty was violated by the events identified by the Vogeles, is properly determined by the arbitrator. Similarly, whether the events specified by the Vogeles establish the elements of fraud goes to the merits of the arbitrable claim and, thus, must be resolved by the arbitrator. Should the arbitrator determine that a requisite element of a claim made by the Vogeles is missing, then the arbitrator can properly deny relief on that cause of action.

In sum, Smith Barney contends that the Vogeles' claims "are clearly premised on allegedly unsuitable investments purchased prior to [the six-year period]." Plaintiff's Response to Defendant's Supplemental Memoranda, at 21 (February 7, 1997). This is unpersuasive. The theories of recovery specified by the Vogeles do not attempt to recover for the purchase of these investments. To the contrary, the Vogeles' claims, accepted on their face, seek recovery on the basis of alleged events, both acts and omissions, occurring within the six year period. As such, these claims are properly submitted to the arbitrator for a resolution on the merits.

Accordingly, Smith Barney's petition to enjoin arbitration must be denied, and the instant matter is dismissed.

---

that purchase, would be barred from arbitration by NASD Code § 15.

**17.** Of course, damages would not be measured from the original date of purchase, but rather would represent losses attributable to any proven concealment.

**18.** *Hofmann* recognizes that there will often be further dispute regarding (i) what constitutes the relevant "occurrence or event" with respect to an independent cause of action, and (ii) the date of that "occurrence or event." *Hofmann*, 984 F.2d at 1382. To resolve these disputes, the panel adopted a two-step procedure requiring the court (i) to determine whether the parties intended to submit disputes over these questions to the arbitrator, and, if not, (ii) to determine the nature and date of the relevant "occurrence or event". *Id.* Significantly, Smith Barney does not contend that the Vogeles' claims, as alleged, have another relevant "occurrence or event" or that the relevant "occurrence or event" has another date. Smith Barney, rather, contends only that the each "occurrence or event" is merely a tolling argument or, in the alternative, fails to state a claim. Thus, the two-step procedure for resolving disputes over relevant events and dates for a particular claim is unnecessary here.