SMITH BARNEY, INC., AND ROBERT NIXON, APPELLEES, V. PAINTERS LOCAL UNION NO. 109 PENSION FUND ET AL., APPELLANTS.

579 N.W. 2d 518

Filed June 12, 1998. No. S-97-350.

Gail E. Boliver, of Boliver Law Firm, for appellants.

Kathleen M. Quinn, of Kutak Rock, and David R. Wilson, of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and McCORMACK, JJ., and HASTINGS, C.J., Retired, and BLUE, D.J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

In this declaratory judgment action, the district court granted summary judgment to the plaintiffs-appellees, Smith Barney, Inc., and Robert Nixon, a former employee of Smith Barney's predecessor, and permanently enjoined the defendants-appellants, Painters Local Union No. 109 Pension Fund, and James King, Larry Curtice, and Robert Briggs, Jr., in their capacities as trustees for the fund, from arbitrating whether a dispute arising under the agreement the fund had entered into with Smith Barney's predecessor through Nixon is time barred. Without opposition, the fund and the trustees successfully moved to bypass the Nebraska Court of Appeals, and assert, in summary, that the district court erred in (1) exercising jurisdiction and (2) ruling the dispute to be nonarbitrable. Although the first assignment of error is without basis, the second is meritorious. We therefore reverse, vacate, and set aside the decree, and remand the cause for dismissal.

## II. SCOPE OF REVIEW

As is determined hereinafter in part IV(2), the agreement in question involves interstate commerce. A suit against a stockbroker, that is to say, a broker-dealer, alleging negligence and breach of the agreement or fiduciary duty under such an agreement is governed by federal law, not by Nebraska's Constitution, statutes, or case law. See *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993). Moreover, the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1994), has preempted state law with respect to actions brought to clarify rights to benefits or to enforce rights arising under a plan coming within the purview of the act. *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996). We therefore look to federal law for the scope of our review and are bound by the rule that under such law, the determination of arbitrability turns on contract interpretation, which is a question of law and therefore subject to plenary or de novo review by an appellate court. *PaineWebber Inc. v. Elahi*, 87 F.3d 589 (1st Cir. 1996); *State of N.Y. v. Oneida Indian Nation of New York*, 90 F.3d 58 (2d Cir. 1996).

## III. FACTS

In 1986, the fund engaged Shearson Lehman Brothers Inc. as its investment adviser. Shearson later became part of Smith Barney; we therefore hereafter refer to the subject transactions as if they at all times involved Smith Barney. Smith Barney had the fund sign a standard agreement which contained an arbitration clause requiring the fund to take any disagreements it might have with Smith Barney to arbitration.

The clause reads, in relevant part: "[A]ny controversy arising out of or relating to my accounts . . . shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. . . ." All parties agree that the association's Code of Arbitration Procedure is adopted by reference into the client agreement by the arbitration clause.

Section 1 of the code declares that the code is prescribed and adopted by the association "for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association . . . ." Section 15 provides in part: "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy." Section 35 of the arbitration code reads, in relevant part: "The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties."

The securities in question were purchased between January 1987 and February 1989. On December 15, 1995, the fund filed an arbitration claim with the association against Smith Barney and Nixon for breach of fiduciary duty, fraudulent misrepresentation, and failure to supervise. On February 20, 1996, Smith Barney and Nixon filed this action.

## IV. ANALYSIS

### 1. EXERCISE OF JURISDICTION

While the underlying dispute in this action implicates the federal retirement act, the suit seeks declaratory and injunctive

relief under the statutes of this state. Therefore, this action brings the federal retirement act into play only as part of the fund's defense. Since a suit may not be removed to federal court on the basis of a federal defense, including the defense of preemption, *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983), the district court possessed and properly exercised subject matter jurisdiction. See, also, *Smith Barney, Inc. v. Painters Local Union No. 109*, 976 F. Supp. 1293 (D. Neb. 1996) (affirms magistrate's remand of this case to state court).

## 2. ARBITRABILITY

### (a) General Nature of Agreement to Arbitrate

The federal Arbitration Act, 9 U.S.C. § 1 et seq. (1994), brings within its purview contracts involving interstate commerce. §§ 1 and 2. See, also, *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984); *Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473 (E.D.N.Y. 1986); *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996). Smith Barney is a Delaware corporation having its principal place of business in the State of New York and conducts a nationwide business, as did its predecessor. The fund is located and managed in Nebraska, and the trustees are Nebraska residents. As the parties' agreement in the instant case empowered Smith Barney to advise the fund in investment matters, the transactions in question clearly involved interstate commerce. Accordingly, the act governs all questions arising under the client agreement before us. See *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

The arbitration act creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [a]ct" and represents "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

The U.S. Supreme Court has held that arbitration " 'is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' "

*AT&T Technologies v. Communications Workers*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). A party has a constitutional right to adjudication of a justiciable dispute, and the law will not find a waiver of that right absent " 'direct and explicit evidence of actual intent' " of a party's agreement to do so. *McCarthy v. Azure*, 22 F.3d 351, 358 n.9 (1st Cir. 1994). The arbitration act prohibits a court from compelling arbitration unless the court first satisfies itself that the issue is referable to arbitration under such an arbitration clause. 9 U.S.C. § 3. Thus, whether an issue is to be decided by arbitration is a matter of the parties' contractual intent. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995). In *Mastrobuono*, the U.S. Supreme Court held that the arbitration act not only declared a national policy favoring arbitration, but actually withdrew the power from the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.

Therefore, the threshold question in the instant case is which body is empowered to determine the arbitrability of this case, a judicial tribunal or an arbitrator. As noted in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995):

> Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, [citations omitted], so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.

(Emphasis in original.)

When deciding whether the parties agreed to arbitrate a certain matter, including arbitrability, courts generally are to apply ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc., supra.*

As noted in *First Options of Chicago, Inc.*, 514 U.S. at 945, the question of who should decide arbitrability is "rather

arcane" and may commonly be overlooked during negotiations. See, also, *AT&T Technologies, supra.* Therefore, courts should hesitate to transform silence or ambiguity into an agreement to arbitrate arbitrability. The basic objective in this area is to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties. *First Options of Chicago, Inc., supra.* Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by a court, not an arbitrator. *AT&T Technologies, supra.*

In *AT&T Technologies, supra,* and *First Options of Chicago, Inc., supra,* the U.S. Supreme Court created a presumption that the courts would decide arbitrability questions involving a time bar, unless the parties had clearly and unmistakably decided otherwise. However, outside of time-bar questions, the opposite presumption applies, and any doubt concerning the scope of arbitrable issues is to be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. *Moses H. Cone Hospital, supra.*

### (b) Intent as to Time Bar

The pivotal issue therefore becomes whether the arbitration code clearly and unmistakably assigns to arbitrators the power to determine what "occurrence or event" gave rise to the claim.

Five federal circuit courts of appeal have ruled that a court must decide the applicability of the § 15 time bar: *Smith Barney, Inc. v. Sarver,* 108 F.3d 92 (6th Cir. 1997); *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith,* 78 F.3d 474 (10th Cir. 1996); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,* 62 F.3d 381 (11th Cir. 1995); *Painewebber Inc. v. Hofmann,* 984 F.2d 1372 (3d Cir. 1993); *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir. 1992).

Based upon *PaineWebber Inc. v. Allen,* 888 F. Supp. 53 (E.D. Va. 1993), *aff'd mem.* 45 F.3d 427 (4th Cir. 1995), Smith Barney would also place the Fourth Circuit in this camp. Therein, a district court within that circuit held that the 6-year time bar was a substantive eligibility question for the courts to decide and that it ran from the date of purchase of the investment. However,

another district court within the circuit held in *Humphrey v. Prudential Ins. Co. of America*, No. Civ.A.2:92CV178, 1993 WL 275213 (E.D. Va. Jan. 8, 1993), *appeal dismissed, Humphrey v. Prudential Securities Inc.*, 4 F.3d 313 (4th Cir.), that timeliness under the 6-year time bar was a procedural question falling under the purview of the contract and must be decided by the arbitrators. As the Fourth Circuit has not yet issued a fully reasoned opinion on the question, the issue is unresolved in that circuit.

Five other federal circuit courts have held that the arbitrator should decide the time-bar question: *PaineWebber Inc. v. Elahi*, 87 F.3d 589 (1st Cir. 1996); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750 (5th Cir. 1995); *FSC Securities Corp. v. Freel*, 14 F.3d 1310 (8th Cir. 1994); *O'Neel v. National Ass'n of Securities Dealers*, 667 F.2d 804 (9th Cir. 1982).

In the first of this latter series of cases, the Ninth Circuit in *O'Neel, supra*, found a clear expression of intent in § 35 that the issue of timeliness be submitted to arbitration. In the next case in point of time, the Eighth Circuit in *Freel, supra*, also focused on the language of § 35 empowering the arbitrators " 'to interpret and determine the applicability of all provisions of this Code . . . .' " *Freel* at 1312. The *Freel* court viewed this as a " 'clear and unmistakable expression' " of an intent to commit the interpretation of all provisions under the arbitration code, including § 15 time-bar issues, to arbitration. *Id.* The *Freel* court also observed that if the parties wanted to limit the scope of arbitration more than is provided in § 35, they could have easily contracted around its broad scope. The *Freel* holding has been followed by a number of state courts, including *Mid-State Securities v. Edwards*, 309 N.J. Super. 73, 706 A.2d 773 (1998); *Smith Barney, Inc. v. Keeney*, 570 N.W.2d 75 (Iowa 1997); *Matter of Noel R. Shahan Trust*, 188 Ariz. 74, 932 P.2d 1345 (Ariz. App. 1996); *Nettleton v. Edward D. Jones & Co.*, 904 S.W.2d 409 (Mo. App. 1995); and *Gaines v. Financial Planning Consultants*, 857 S.W.2d 430 (Mo. App. 1993).

*Matter of Noel R. Shahan Trust* concluded:

> Because we find nothing in the Code that removes § 15 from the scope of § 35, we agree with the following statement in *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1313

(8th Cir. 1994): "In no uncertain terms, section 35 commits interpretation of all provisions of the NASD Code to the arbitrators. . . . [W]e see no reason not to apply section 35 to the arbitrators' decision regarding the application of section 15."

*Id.* at 77, 932 P.2d at 1348.

In *Boone, supra*, the Fifth Circuit characterized time bars as part of the procedural requirements to arbitration and, as such, to be decided by arbitration. In accordance with the teachings of *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986), and *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995), the First Circuit in *Elahi, supra*, employed a two-step process to determine whether parties intended time bars to be settled by an arbitrator or the courts. It asked first whether the parties entered into a valid arbitration agreement and whether the arbitration agreement covered the subject matter of the underlying dispute. The *Elahi* court concluded that

where the parties have clearly agreed to arbitrate the subject of the underlying dispute between them, as the parties [had done], it is unlikely that they intended other issues related to the dispute, such as the timeliness of the submission of the claim, to affect the "arbitrability" of the dispute.

*Elahi* at 600.

The contract in *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996), did not incorporate the arbitration code. However, the Second Circuit held that the contract clause assigning to arbitration " '*[a]ny and all controversies* . . . concerning any account' " was clear evidence of the parties' intent to have the arbitrator determine arbitrability. (Emphasis in original.) *Id.* at 1199. It determined that the broad "any and all controversies" language was "inclusive, categorical, unconditional and unlimited" and that "[t]he words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration." *Id.* It also noted that had the contract incorporated the arbitration code, § 35 would have committed all issues, including arbitrability and timeliness, to arbitration. It pointed out in addition that as PaineWebber had drafted the agreement, any ambiguities

should be construed against it. The Second Circuit observed as well that its decision did not harm the party seeking the protection of the § 15 time bar. That party's appropriate remedy would be to defend the arbitration action on timeliness grounds under § 15, not attempt to get arbitration enjoined.

We find the cases holding time-bar issues to be arbitrable the more persuasive. For example, in the earliest decision holding otherwise, *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir. 1992), the court based its conclusion that courts must decide the time-bar issue upon three bases: First, it read the words "'eligible for submission to arbitration'" (emphasis omitted) in § 15 as meaning cognizable or within the jurisdiction of the arbitrator and concluded that claims over 6 years old were not substantively eligible for submission to the arbitrator. 957 F.2d at 513. Second, it read a 1988 letter from an association staff attorney, stating that the association "'"will not process a claim that falls wholly outside the six year period,"'"" as evidence that the association itself considered § 15 to be a jurisdictional bar. 957 F.2d at 512. Last, it concluded that § 35 of the arbitration code was not a clear and unmistakable expression of the parties' intent to give arbitrators the power to decide time-bar issues.

The problem with the *Sorrells* court's interpretation of the "eligible for submission" language is that the interpretation results in the court's predetermining the outcome of the controversy in order to decide what the forum should be. The *Sorrells* decision concluded that the "occurrence" in question was the security purchase rather than any later fraud or deception. By defining the occurrence, the court thereby arrived at the conclusion that the arbitrator had no jurisdiction when the crucial legal question which was to be decided by the court or arbitrator was: What constituted the occurrence, the purchase or subsequent actions? The *Sorrells* court assumed, without analysis, that the "occurrence or event" was the stock purchase. However, even if that were correct, if all controversies under the contract are directed to arbitration, then the occurrence controversy should have gone to arbitration for determination.

Leaving aside the question of how much weight should be given the letter from an association staff attorney (the letter had

been entered into evidence in an earlier Seventh Circuit case, *PaineWebber Inc. v. Farnam*, 870 F.2d 1286 (7th Cir. 1989)), the statement that the association "will not process a claim that falls wholly outside the six year period" is not helpful. After all, the fund's argument is that its claim falls within the 6-year period because the acts of fraud and violations of fiduciary duty that were allegedly committed occurred after the purchases and within the 6-year period prior to the bringing of the claim. Barring claims that fall wholly outside the 6-year period would not bar the fund's claims if an arbitrator were to agree with the fund's definition of when the critical events occurred.

The Seventh Circuit reiterated its *Sorrells* decision this year in *Miller v. Flume*, No. 97-1127, 1998 WL 128443 (7th Cir. Mar. 24, 1998), reasoning that both interpretations and determinations about applicability of the arbitration code are steps that take place after the threshold determination of arbitrability has occurred. It repeated its *Sorrells* conclusion that § 35 is not the kind of clear and unmistakable language needed to show parties intended arbitrators to determine arbitrability. Similarly, the courts in *Smith Barney, Inc. v. Sarver*, 108 F.3d 92 (6th Cir. 1997), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381 (11th Cir. 1995), concluded that § 35 of the code did not establish a clear and unmistakable intent that the timeliness of an arbitration clause should be determined by the arbitrators rather than by the courts.

In *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 513 (3d Cir. 1990), the Third Circuit relied, in part, upon an analysis of the "eligible for submission" sentence contained in rule 603 of the New York Stock Exchange Department of Arbitration, which is almost identical to § 15 of the arbitration code:

> "Eligible" is defined as "fitted or qualified to be chosen or used" or "worthy to be chosen or selected." *Webster's Third New International Dictionary* 736 (1966). "Submission" is defined as the act of "commit[ting something] for consideration, study, or decision." Id. at 2277. Interpolating these definitions into the text of Rule 603, the relevant portion of the rule would state that, after six years, a dispute "shall [not] be worthy to be chosen or selected for [the] consideration, study, or decision [of] arbitration."

Therefore, the Third Circuit concluded that "this expanded reading of Rule 603 unambiguously supports [the] conclusion that the parties intended to bar from arbitration disputes raised more than six years after the events giving rise to them." *Hartmann*, 921 F.2d at 513.

The Third Circuit went further in *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1379 (3d Cir. 1993), noting that "§ 15 can reasonably be read in only one way—as a substantive limit on the claims that the parties have contracted to submit to arbitration." However, *Hofmann* did not stop with the assumption made by some courts that the occurrences in question were the purchases. It acknowledged that there are a number of events which may trigger the commencement of the 6-year time-bar period and laid out a method for determining timeliness:

> [T]here will inevitably be claims that can fairly be characterized as either independent causes of action or as tolling/discovery arguments. In view of the general presumption of arbitrability, *see id.*, the court should, as a benchmark, generally accept a party's statement as to what constitutes a cause of action and permit the arbitration of that claim *as long as* the asserted cause of action is not *clearly* a mere tolling or discovery argument. However, when the stated cause of action is patently nothing more than an attempt to toll the six year period, the court must enjoin the arbitration of that claim.

(Emphasis in original.) *Id.* at 1381.

While the *Hofmann* court noted that some of the claims in that case obviously had occurred prior to the time bar, it remanded other claims to the district court for a determination of whether they were arbitrable, i.e., whether the events occurred after the time bar and warned the trial court " 'not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous,' " the merits of the claims were to be left to the arbitrator. *Id.* at 1381, quoting *AT&T Technologies*, 475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Other courts which have, like *Hofmann*, remanded to have the trial court determine when the claims "arose" include *Cogswell v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.,* 78 F.3d 474 (10th Cir. 1996), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen, supra.*

In *Cogswell, supra,* the 10th Circuit criticized the Eighth Circuit's decision in *FSC Securities Corp. v. Freel,* 14 F.3d 1310 (8th Cir. 1994), focusing on the fact that § 35 says nothing specific about whether the arbitrator or the court should decide whether a claim is arbitrable under § 15. That analysis is not particularly persuasive. Section 35 provided that the arbitrator " 'shall be empowered to interpret and determine the applicability of all provisions under this Code.' " *Cogswell* at 480. The plain reading of that language is that the arbitrator is empowered to interpret all of the provisions of the code, including the § 15 provision concerning what claims are "eligible" for arbitration.

The *Cogswell* court also reasoned that under statutory interpretation principles, specific provisions take precedence over general provisions, and that § 15 is a specific provision. However, the Tenth Circuit does not explain how §§ 15 and 35 conflict. Section 15 lays out the time bar for claims, but does not indicate whether a court or an arbitrator should interpret and apply this time bar. Section 35 does not specifically mention § 15, but declares that all provisions of the code will be determined by an arbitrator. There is no conflict; the two sections address different issues.

### 3. SUMMARY

In the absence of a controlling U.S. Supreme Court decision on the matter, we are persuaded that the entire client agreement, viewed as a whole, including the incorporation of the arbitration code, means considering § 35 of the code in conjunction with §§ 1 and 15 thereof and that time-bar issues are therefore arbitrable.

### V. JUDGMENT

Accordingly, as first noted in part I, the decree of the district court is reversed, vacated, and set aside, and the cause is remanded for dismissal.

REVERSED, VACATED, AND SET ASIDE, AND CAUSE REMANDED FOR DISMISSAL.

GERRARD and STEPHAN, JJ., not participating.